(827 P.2d 784)
No. 66,215

CITY OF HUTCHINSON, *Appellee*, v. THOMAS. R. GILMORE, *Appellant*.

Opinion filed March 6, 1992.

*Richard J. Rome*, of Hutchinson, for the appellant.

*Thomas A. Dower*, of Reynolds, Peirce, Forker, Suter & Rose, of Hutchinson, for the appellee.

Before BRISCOE, C.J., BRAZIL, J., and TERRY L. BULLOCK, District Judge, assigned.

BULLOCK, J.: Thomas Gilmore appeals his conviction of driving while under the influence of intoxicating liquor, in violation of City of Hutchinson ordinance No. 23-401a, alleging insufficient evidence to support his conviction and a conflict of interest by the prosecutor.

Officer James Rayburn testified that at about 11:50 p.m. on August 21, 1989, he noticed a 1974 Chevrolet Impala cross the center line of the road and observed other signs of erratic driving as he followed the car. Rayburn stopped the Impala and learned that Gilmore was the driver. Rayburn detected the strong odor of alcohol and asked Gilmore to perform field sobriety tests, which Gilmore did not do satisfactorily. At this point, Gilmore suggested

they do some negotiating. Rayburn arrested Gilmore, using force because Gilmore would not cooperate. Gilmore tried to kick out the windshield of the police car as he was being transported to the police station. At the station, Rayburn informed Gilmore of the consequences of refusing a breath test, but Gilmore refused to take the test, citing "religious insanity" as his reason.

According to Gilmore, he had spent most of the day driving a tractor in a farm field with two co-workers. He testified that he drank two beers during his lunch break and two beers at the end of the day, which was about 10:00 or 10:30 p.m. Gilmore then drove one of his co-workers home. He stated he was driving in a "normal fashion" and had not crossed the center of the road. He pulled his car to the side of the road when he saw the red light on the police car. After giving Rayburn his driver's license, Gilmore was asked to perform tests and he recited the ABC's forward and backward. Gilmore thought he had performed the tests correctly. Gilmore alleges he did not ask to negotiate. He was taken to the police car, where his feet were kicked out from under him by Rayburn. When they reached the police station and entered the elevator, Gilmore contends Rayburn kicked and beat him while he was handcuffed. Gilmore alleges he then passed out and, when he awoke, he was being asked to take a breath test and he was "a bit flustered."

Thomas A. Dower was appointed to represent Gilmore, who was indigent. Dower discovered Gilmore had been on the opposing side of a bitter litigation battle in which Dower's law firm had taken part. Dower informed Gilmore of this connection and Gilmore stated he did not want Dower to represent him. Richard Rome was then appointed as attorney for Gilmore. Gilmore was found guilty in municipal court and appealed to the district court. Dower became the city prosecutor for Hutchinson and represented the City at Gilmore's de novo trial before the district court. Gilmore moved for a change in prosecutor, alleging a conflict of interest, but the motion was denied. Gilmore was also found guilty by the district court.

Gilmore first contends that a rational factfinder could not find him guilty based on the evidence submitted at trial.

"When the sufficiency of the evidence is challenged, the standard of review on appeal is whether, after review of all the evidence, viewed in the light

most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [Citation omitted.]" *State v. Graham,* 247 Kan. 388, 398, 799 P.2d 1003 (1990).

Rayburn testified that Gilmore was asked to perform a number of field sobriety tests and none were performed satisfactorily. Rayburn also stated that, when he approached the car, he detected the strong odor of alcohol and that Gilmore fumbled for his driver's license when it was requested. Looking at this evidence in the light most favorable to the prosecution, we conclude that a rational factfinder could find Gilmore guilty beyond a reasonable doubt.

Gilmore next alleges the district court erred in failing to grant his motion to change prosecutors because Dower's involvement was a conflict of interest. Gilmore claims that, because Dower first met with him as his appointed counsel, he cannot now represent the City as opposing counsel in the same case. Dower argues that, although he met with Gilmore, the primary matters discussed were Dower's association with a law firm which had opposed Gilmore in the past and whether Gilmore would prefer that another attorney be appointed. Gilmore agrees this was the primary discussion, but states they also reviewed the police report.

Rule 1.9 of the Model Rules of Professional Conduct (1991 Kan. Ct. R. Annot. 250) defines conflict of interest with regard to a former client:

"A lawyer who has formerly represented a client in a matter shall not thereafter:

"(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation."

To be disqualified under this rule, Dower must meet four requirements: Dower and Gilmore must have had an attorney-client relationship; the present litigation must include the same or a substantially related matter where Dower previously represented Gilmore; the interests of Dower's present client, the City, must be materially adverse to Gilmore; and Gilmore must not have consented to the representation. *Geisler by Geisler v. Wyeth Laboratories,* 716 F. Supp. 520, 524 (D. Kan. 1989). The last

three requirements are not disputed. The issue is whether Dower "formerly represented" Gilmore and therefore cannot now represent the City as "another person" in the same matter.

Dower denies that he ever represented Gilmore and refers to Black's Law Dictionary 1301 (6th ed. 1990) for a definition of the word "represent": "To represent a person is to stand in his place; to speak or act with authority on behalf of such person; to supply his place; to act as his substitute or agent."

In our view, the dictionary definition in the present context is entirely too general. In a case such as the one before us, the question of conflict in reality arises from the preliminary question of confidentiality and attorney-client privilege. MRPC 1.9; MRPC 1.10 (1991 Kan. Ct. R. Annot. 251); K.S.A. 60-426. Under K.S.A. 60-426(c)(1), a person becomes a client for purposes of privilege and confidentiality rules when that person contacts an attorney *seeking* legal advice. If confidential or privileged information is exchanged, a conflict would arise if that attorney then switched sides, even if no actual employment resulted from the initial conference. MRPC 1.9, 1.10.

These questions were considered by our Supreme Court in the important case of *Parker v. Volkswagenwerk Aktiengesellschaft*, 245 Kan. 580, 781 P.2d 1099 (1989):

"Where a motion to disqualify an attorney under MRPC 1.10(b) (1988 Kan. Ct. R. Annot. 210) has been filed, the trial court must hold a full evidentiary hearing and determine whether the attorney in question acquired material and confidential information during his or her former employment. The court must then make specific factual findings whether the attorney had knowledge of material and confidential information." Syl. ¶ 4.

"On a motion to disqualify, the burden of proof lies with the attorney or firm who is sought to be disqualified." Syl. ¶ 5.

Thus, when challenged, an attorney carries the burden to establish in a fact hearing that no confidential or privileged information was acquired in an initial consultation. If that burden is sustained, there is no conflict in the attorney switching sides. If the burden is not sustained, a conflict exists and the attorney must step down.

A Kansas case very much on point to the present situation is *State v. Leigh*, 178 Kan. 549, 289 P.2d 774 (1955). In that case, an attorney consulted with a defendant about his case and discussed whether he would be defendant's attorney. As there was

some question whether the case could be completed before the attorney took office as county attorney, he apparently declined to represent defendant. The attorney later prosecuted the case as county attorney. He admitted consulting with defendant, but stated that he took no notes and the information he received had nothing to do with his preparation and prosecution of the case as he received all evidence from outside sources. The Supreme Court held that "[a]n attorney cannot be permitted to participate in the prosecution of a criminal case if, by reason of his professional relations with the accused, he has acquired knowledge of facts upon which the prosecution is predicated or which are closely interwoven therewith." 178 Kan. at 552. The court also noted:

"The authorities are to the effect that in a criminal action, even where no fee has been agreed upon, demanded or asked, and though the services rendered are gratuitous, yet if an attorney has discussed the case with his client or proposed client, or voluntarily listens to his statement of the case preparatory to the defense, he is thereby disqualified to accept employment on the other side as a prosecutor or assistant prosecutor. [Citations omitted.]" 178 Kan. at 553.

In the case at bar, no hearing was held in the district court to determine whether Dower acquired confidential or privileged information. Accordingly, we must remand for that hearing to be held. If at that hearing Dower sustains his burden to prove no suspect information was conveyed, this conviction should stand. If not, a new trial should be granted with new prosecuting counsel, inasmuch as jeopardy would not have attached. See *In re Habeas Corpus Petition of Lucas*, 246 Kan. 486, 491, 789 P.2d 1157 (1990); *State v. Hanks*, 236 Kan. 524, 535, 694 P.2d 407 (1985); *State v. McCowan*, 226 Kan. 752, 763-65, 602 P.2d 1363 (1979), *cert. denied* 449 U.S. 844 (1980); *State v. Bloomer*, 197 Kan. 668, 675, 421 P.2d 58 (1966), *cert. denied* 387 U.S. 911 (1967).

Remanded.