430 S.E.2d 569

**STATE of West Virginia ex rel. Angela McCLANAHAN, Relator,**

v.

**Honorable John HAMILTON, Judge of the Circuit Court of Pendleton County, Respondent.**

No. 21523.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 2, 1993.

Decided April 23, 1993.

James Paul Geary, Geary & Geary, Petersburg, for relator.

Jerry D. Moore, Pros. Atty. of Pendleton County, Franklin, for respondent.

MILLER, Justice:

In this original proceeding in prohibition, Angela McClanahan, the relator, seeks to prevent the respondent judge from proceeding in the criminal action against her until Jerry Moore, the Prosecuting Attorney of Pendleton County, is disqualified from the case. The relator asserts that Mr. Moore should be prohibited from participating in the prosecution because he previously represented her in a civil action involving a substantially related matter. We agree, and, accordingly, we grant a writ of prohibition.

### I.

On November 4, 1992, Angela McClanahan was indicted by a Pendleton County grand jury for the malicious assault of her husband, Steven McClanahan. Jerry Moore undertook to prosecute the case. The relator immediately filed a motion to disqualify Mr. Moore because of a conflict of interest.

In the motion, the relator explained that she had separated from her husband in April of 1990 and had retained Mr. Moore to represent her in a divorce proceeding. During the time Mr. Moore represented her, she alleges that she divulged confidential information to him regarding her husband's abusive conduct. Thereafter, Mr. Moore filed a complaint on behalf of Mrs. McClanahan seeking a divorce from her husband on the ground of cruel and inhuman treatment. The couple later reconciled, and the divorce proceedings were dismissed in December of 1990.

The relator contended that Mr. Moore should be disqualified from prosecuting the charge against her because her defenses of self-defense and "battered wife syndrome" are substantially related to the facts and confidential information she divulged to Mr. Moore when he represented her in the divorce action. Mr. Moore admitted that he represented the relator in the divorce proceeding. Nonetheless, he argued that he should not be disqualified because the relator never divulged confidential information or information that could be used against her in the criminal prosecution.

On December 9, 1992, after hearing arguments of counsel, the respondent judge denied the motion for disqualification. Subsequently, the relator filed this petition for a writ of prohibition. On December 29, 1992, we issued a rule to show cause why the writ should not issue.

## II.

In Syllabus Point 1 of *Nicholas v. Sammons*, 178 W.Va. 631, 363 S.E.2d 516 (1987), we established this general rule with regard to the disqualification of a prosecuting attorney:

"Prosecutorial disqualification can be divided into two major categories. The first is where the prosecutor has had some attorney-client relationship with the parties involved whereby he obtained privileged information that may be adverse to the defendant's interest in regard to the pending criminal charges. A second category is where the prosecutor has some direct personal interest arising from animosity, a financial interest, kinship, or close friendship such that his objectivity and impartiality are called into question."

In *Nicholas*, the defendant had been indicted for obtaining money by false pretenses from a bank. The defendant moved to disqualify the prosecuting attorney because he had occasionally represented the bank in title work and collecting delinquent accounts. The prosecuting attorney argued that he should not be disqualified because the representation was ad hoc and he had not been generally retained by the bank. Moreover, the prosecuting attorney asserted that he had never represented the bank in connection with any transaction involving the defendant. We held that the prosecutor was not disqualified.

## A.

At the time *Nicholas* was decided, the Code of Professional Responsibility was in effect in this jurisdiction and did not contain a counterpart to Rule 1.9 of the Rules of Professional Conduct, which governs conflicts of interest between an attorney and a former client.[1] Consequently, we did not discuss the ramifications of Rule 1.9.[2] Rule 1.9 places two general restrictions on attorneys:

"A lawyer who has formerly represented a client in a matter shall not thereafter:

"(a) represent another person in the same or substantially related matter in which that person's interest are materially adverse to the interests of the former client unless the former client consents after consultation; or

"(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known."

In this case, we deal with Rule 1.9(a) of the Rules of Professional Conduct, which precludes an attorney who has formerly represented a client in a matter from representing another person in the same or a substantially related matter that is materially adverse to the interests of the former client unless the former client consents af-

---

1. We adopted the Rules of Professional Conduct in June of 1988 and made them effective on or after January 1, 1989. These rules superseded the Code of Professional Responsibility.

2. In *Garlow v. Zakaib*, 186 W.Va. 457, 413 S.E.2d 112 (1991), we referred to Rule 1.9 and several other rules dealing with the disqualification of an attorney. We did not analyze the scope of Rule 1.9 because the record was not adequately developed on the disqualification issue. In Syllabus Point 1 of *Garlow*, we said:

"A circuit court, upon motion of a party, by its inherent power to do what is reasonably necessary for the administration of justice, may disqualify a lawyer from a case because the lawyer's representation in the case presents a conflict of interest where the conflict is such as clearly to call in question the fair or efficient administration of justice. Such motion should be viewed with extreme caution because of the interference with the lawyer-client relationship."

In several later cases, we addressed attorney disqualification, but did not discuss Rule 1.9 because a former client was not involved. *See State ex rel. Morgan Stanley & Co. v. MacQueen*, 187 W.Va. 97, 416 S.E.2d 55 (1992); *State ex rel. Bailey v. Facemire*, 186 W.Va. 528, 413 S.E.2d 183 (1991).

ter consultation. The principle underlying Rule 1.9(a) is based not only upon the attorney's duty of fidelity and loyalty to his client, but also upon the attorney-client privilege, which precludes the attorney from disclosing or adversely utilizing information confidentially disclosed by his client.

### B.

■ The substantial relationship test, which is the beginning point of any conflict-of-interest analysis, was developed before the Rules of Professional Conduct were drafted. This test was first articulated in the case of *T.C. Theatre Corp. v. Warner Brothers Pictures*, 113 F.Supp. 265, 268 (S.D.N.Y.1953):

> "[T]hat the former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client."

*See, e.g., Kevlik v. Goldstein*, 724 F.2d 844 (1st Cir.1984); *Government of India v. Cook Indus., Inc.*, 569 F.2d 737 (2d Cir. 1978); *Evans v. Artek Sys. Corp.*, 715 F.2d 788 (2d Cir.1983); *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020 (5th Cir.), *cert. denied*, 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981); *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715 (7th Cir.1982); *Gas–A–Tron of Ariz. v. Union Oil Co. of Cal.*, 534 F.2d 1322 (9th Cir.), *cert. denied sub nom. Shell Oil Co. & Exxon Corp. v. Gas–A–Tron of Ariz.*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976); *Smith v. Whatcott*, 757 F.2d 1098 (10th Cir.1985); *Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725 (11th Cir.1988); *Koch v. Koch Indus.*, 798 F.Supp. 1525 (D.Kan.1992); *Derrickson v. Derrickson*, 541 A.2d 149 (D.C.App.1988); *Northeastern Okla. Community Dev. Corp. v. Adams*, 510 P.2d 939 (Okla.1973); *Howard v. Texas Dep't of Human Servs.*, 791 S.W.2d 313 (Tex.Civ.App.1990); *Berg v. Marine Trust Co., N.A.*, 141 Wis.2d 878, 416 N.W.2d 643 (App.1987); *Carlson v. Langdon*, 751 P.2d 344 (Wyo.1988).

There are two distinct approaches to what is meant by a "substantially related matter." The first approach, which has been adopted by a majority of the courts, compares the facts, circumstances, and legal issues of the past and present representations and determines whether they are related in some substantial way. *See, e.g., Kevlik v. Goldstein, supra; Trust Corp. of Mont. v. Piper Aircraft Corp.*, 701 F.2d 85 (9th Cir.1983); *Smith v. Whatcott, supra; Carlson v. Langdon, supra.* The other approach, adopted primarily by the Second Circuit, finds a substantial relationship present only when the issues between the two representations are identical or virtually identical. *See, e.g., Government of India v. Cook Indus. Inc., supra.* Courts have criticized this approach because issues frequently are not developed until long after litigation has been commenced. *See, e.g., General Elec. Corp. v. Valeron Corp.*, 608 F.2d 265 (6th Cir.1979), *cert. denied*, 445 U.S. 930, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980); *Carlson v. Langdon, supra.* Not only is the issue-oriented inquiry more limited, it delays bringing a disqualification motion until the issues in the case are developed.

We conclude that the majority rule is more sound. Consequently, under Rule 1.9(a), determining whether an attorney's current representation involves a substantially related matter[3] to that of a former

---

**3.** The comment to Rule 1.9(a) discusses the term "matter":

"The scope of a 'matter' for purposes of paragraph (a) may depend on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client.... The underlying question is whether the lawyer was so involved in the matter that the subsequent rep-

client requires an analysis of the facts, circumstances, and legal issues of the two representations.

## C.

■ In addition to the substantial relationship inquiry, Rule 1.9(a) requires the former client to show that the two representations are adverse. The adverse interest rule also springs from the basic duty of loyalty that an attorney owes to a client. An adverse interest is also an element of Rule 1.7,[4] which relates to a conflict of interest arising out of an attorney's representation of two or more clients at the same time.[5]

Many courts in their discussion of Rule 1.9 do not give extensive consideration to the material adverse representation portion of the rule. *See, e.g., Prisco v. Westgate Entertainment, Inc.*, 799 F.Supp. 266 (D.Conn.1992); *Koch v. Koch Indus., supra; Bieter Co. v. Blomquist*, 132 F.R.D. 220 (D.Minn.1990); *Martindale v. Richmond*, 301 Ark. 167, 782 S.W.2d 582 (1990); *City of Hutchinson v. Gilmore,* 16 Kan. App.2d 646, 827 P.2d 784 (1992); *Interdiction of Charlton*, 609 So.2d 826 (1992); *Carlson v. Langdon, supra.* This reticence may be due to the presumption that confidential information has been divulged by the former client, which we discuss in Part II(D), *infra.* Once the presumption is found to exist, the adverse interest arises from the possibility that confidential information was disclosed.

An adverse interest, also termed a conflict of interest, can occur in a variety of situations. *See* 1 G. Hazard, Jr. & W. Hodes, 1 *The Law of Lawyering* § 1.7:203

(1992); Annot., 52 A.L.R.2d 1243 (1957). It is impossible to devise a single statement that will reveal whether an interest is adverse. The resolution of the issue rests on first determining whether a substantial relationship existed between the two clients' interests. Next, consideration should be given by the court as to whether the attorney's exercise of individual loyalty to one client might harm the other client or whether his zealous representation will induce him to use confidential information that could adversely affect the former client.

## D.

■ Once the former client establishes that the attorney is representing another party in a substantially related matter, the former client need not demonstrate that he divulged confidential information to the attorney. As the court explained in *T.C. Theatre Corp. v. Warner Brothers Pictures*, 113 F.Supp. at 268–69:

"The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into the nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained."

*See also In re American Airlines, Inc.*, 972 F.2d 605 (5th Cir.1992), *cert. denied sub nom. Northwest Airlines, Inc. v. American Airlines Corp.*, — U.S. —, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993); *An-*

---

resentation can be justly regarded as a changing of sides in the matter in question."

**4.** Rule 1.9 acknowledges this point in its comment:

"After termination of a client-lawyer relationship, a lawyer may not represent another client except in conformity with this Rule. The principles in Rule 1.7 determine whether the interests of the present and former client are adverse. Thus, a lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf of the former client. So also a lawyer who has prosecuted an accused person could not properly repre-

sent the accused in a subsequent civil action against the government concerning the same transaction."

**5.** Rule 1.7(a) of the Rules of Professional Conduct provides:

"(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

"(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

"(2) each client consents after consultation."

*alytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263 (7th Cir.1983); *State of Ark. v. Dean Food Prods. Co.,* 605 F.2d 380 (8th Cir.1979), *overruled on other grounds, In re Multi–Piece Rim Prods. Liab. Litig.,* 612 F.2d 377 (8th Cir.1980); *Trone v. Smith,* 621 F.2d 994 (9th Cir.1980); *Smith v. Whatcott, supra; Green v. Montgomery County, Ala.,* 784 F.Supp. 841 (M.D.Ala. 1992); *Koch v. Koch Indus., supra; Derrickson v. Derrickson, supra; Northeastern Okla. Community Dev. Corp. v. Adams, supra; Howard v. Texas Dep't of Human Servs., supra; Berg v. Marine Trust Co., N.A., supra; Carlson v. Langdon, supra. See generally* 7A C.J.S. *Attorney & Client* § 160 (1980 & Supp.1992). The Court of Appeals for the Second Circuit in *Government of India v. Cook Industries, Inc.,* 569 F.2d at 740, made this additional point:

> "[A] court should not require proof that an attorney actually had access to or received privileged information while representing the client in a prior case. Such a requirement would put the former client to the Hobson's choice of either having to disclose his privileged information in order to disqualify his former attorney or having to refrain from the disqualification motion altogether." (Citations omitted).

*See also Hull v. Celanese Corp.,* 513 F.2d 568 (2d Cir.1975); *Emle Indus., Inc. v. Patentex, Inc.,* 478 F.2d 562 (2d Cir.1973); *T.C. Theatre Corp. v. Warner Bros. Pictures, supra.* " 'A potential client can receive the best legal advice only if he fully discloses the facts underlying his legal difficulty, and this he will do only if he believes that his disclosures will be kept in confidence. *Developments in the Law— Conflicts of Interest in the Legal Profession,* 94 Harv.L.Rev. 1244, 1316 (1981).' (Footnote omitted)." *Green v. Montgomery County, Alabama,* 784 F.Supp. at 847.

**E.**

■ Finally, Rule 1.9(a) recognizes that even though an attorney may have a conflict of interest with regard to a former client, the attorney may continue the representation if the former client, after consultation, consents to the representation.[6] During this consultation, the attorney must make a full disclosure to the former client so that an intelligent decision may be made on the consent. *See, e.g., In re Yarn Processing Patent Validity Litig.,* 530 F.2d 83 (5th Cir.1976); *Cox v. American Cast Iron Pipe Co., supra.*

**III.**

■ Courts have applied much the same rule as contained in Rule 1.9(a) to disqualify a prosecutor who previously represented the defendant in a substantially related civil action. *See, e.g., Gajewski v. United States,* 321 F.2d 261 (8th Cir.1963), *cert. denied,* 375 U.S. 968, 84 S.Ct. 486, 11 L.Ed.2d 416 (1964); *State v. Jones,* 180 Conn. 443, 429 A.2d 936 (1980), *overruled on other grounds, State v. Powell,* 186 Conn. 547, 442 A.2d 939 (1982); *Tyree v. State,* 262 Ga. 395, 418 S.E.2d 16 (1992); *Lykins v. State,* 288 Md. 71, 415 A.2d 1113 (1980); *Sharplin v. State,* 330 So.2d 591 (Miss.1976). *Cf. State v. Detroit Motors,* 62 N.J.Super. 386, 163 A.2d 227 (1960) (a conflict of interest arose where criminal defendants were represented in a civil action involving the same subject matter as one of the indictments by a firm in which the prosecutor was a member).[7] *See generally* 27 C.J.S. *District & Prosecuting Attorneys* § 12(6)(c) (1959 & Supp.1992).

In particular, we find guidance in *Lykins v. State, supra,* which is remarkably factually similar to the case at bar. In *Lykins,* the defendant was indicted for assault with

---

**6.** Rule 1.9(a) states: "A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or substantially related matter in which that person's interest are materially adverse to the interests of the former client *unless the former client consents after consultation*[.]" (Emphasis added).

**7.** In *Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), the Supreme Court held that the defendant's Sixth Amendment rights were not violated when the trial court prohibited conflicted counsel from representing the defendant notwithstanding the defendant's waiver of any conflict. *See also Hoffman v. Leeke,* 903 F.2d 280 (4th Cir.1990).

intent to murder her paramour. The prosecuting attorney had previously represented the defendant in a divorce action against her husband. At that time, the defendant relayed to the attorney her domestic history, including information about her extramarital liaison. After being charged with assault, the defendant moved to dismiss the indictment because the prosecutor had a conflict of interest. The trial court agreed and dismissed the indictment. The Court of Appeals of Maryland reversed, finding that the more appropriate action was to disqualify the prosecutor.

"[T]he proper action to be taken by a trial judge, when he encounters circumstances similar to those in the case at bar which he determines to be so grave as to adversely affect the administration of justice but which in no way suggest the bringing of a prosecution for improper motives ... *is to supplant the prosecutor, not to bar the prosecution.*" 288 Md. at 85, 415 A.2d at 1121. (Emphasis added).

■ Here, the prosecutor represented the relator in 1990 in a suit for divorce based on the ground of cruel and inhuman treatment. The relator's mistreatment at the hands of her husband was a central issue in that proceeding. These same facts and circumstances are substantially related to her defenses of self-defense and "battered wife syndrome" in the criminal action. The adverse interest in the prosecutor's continued representation is apparent in this situation. Diligent prosecution would seek to discredit the relator's claims of self-defense and "battered-wife syndrome." This goal would be diametrically contrary to the position the prosecutor advanced on behalf of the relator in the earlier divorce suit. Finally, the relator has not consented to the prosecutor's representation of the State.[8]

## IV.

Thus, we believe that the relator has established sufficient grounds for disqualification of the prosecutor under Rule 1.9(a). In the past, we have permitted a defendant to challenge a trial court's adverse ruling on a defendant's motion to disqualify the prosecutor in an original proceeding. *See, e.g., State ex rel. Bailey v. Facemire,* 186 W.Va. 528, 413 S.E.2d 183 (1991) (mandamus); *Nicholas v. Sammons, supra* (prohibition); *Farber v. Douglas,* 178 W.Va. 491, 361 S.E.2d 456 (1985) (prohibition); *State ex rel. Moran v. Ziegler,* 161 W.Va. 609, 244 S.E.2d 550 (1978) (prohibition). The reason for allowing this procedure is to correct clear-cut legal errors which, if not corrected, would result in reversal of the case upon appeal. We spoke to this point in Syllabus Point 1 of *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979), and recognized that the rule was based upon principles of judicial economy:

"In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, the Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance."

For the foregoing reasons, we issue a writ of prohibition prohibiting the trial court from proceeding further with the trial of the underlying criminal action until the prosecutor is disqualified from prosecuting the case.

Writ granted.

---

**8.** In a criminal case where the prosecutor is deemed to have a conflict of interest with a defendant, we do not believe that the defendant can waive the conflict without the advice of counsel.