679 S.E.2d 702

**In re Daniel R. JAMES, a member of the West Virginia State Bar.**

**No. 33600.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 27, 2009.

Decided June 23, 2009.

872

Andrea Hinerman, Senior Lawyer Disciplinary Counsel, Office of Disciplinary Counsel, Charleston, WV, for Petitioner.

Lonnie C. Simmons, DiTrapano, Barrett & DiPiero, Charleston, WV, for Respondent.

PER CURIAM.

In this lawyer disciplinary proceeding, the petitioner, Office of Disciplinary Counsel (hereinafter ODC), objects to the recommendation of the Hearing Panel Subcommittee (hereinafter HPS) of the Lawyer Disciplinary Board (hereinafter Board) to dismiss all charges against Respondent Daniel R. James (hereinafter Respondent). Following a disciplinary hearing on February 19, 2008, the Hearing Panel Subcommittee tendered its Report and recommendation that these charges be dismissed. We must determine whether an attorney's actions regarding two potential clients violated West Virginia Rules of Professional Conduct (hereinafter referred to as Rules). After careful review of the allegations of misconduct, the record developed by the HPS, the applicable law and the arguments and briefs of the parties, we affirm the recommendation of the Hearing Panel Subcommittee and dismiss the charges filed against Daniel R. James.

## I.

### FACTS

This proceeding arises from actions taken by Daniel R. James (hereinafter referred to as James or Respondent), an active member of the West Virginia State Bar, in relation to a tragic car accident that happened two years prior to the Statement of Charges being filed on September 21, 2007. James was admitted to the West Virginia State Bar on or about May 16, 1978. His practice is in Keyser, Mineral County, West Virginia.

On September 21, 2007, the Lawyer Disciplinary Board issued a formal Statement of Charges against the Respondent, alleging that he violated Rules 1.7, 1.9 and 1.16, in his dealings with the family of Josi Reed as well as his later representation of Jonathan McRobie. The Statement of Charges alleged, in pertinent part, that Respondent's representation of McRobie in the criminal matter arising from the automobile accident was the same or was a substantially related matter in which Respondent had also conferred with the Reeds and provided advice and assistance. Thus, it was averred that these actions violated both Rule 1.7 (general rules regarding conflicts of interests)[1] and Rule 1.9 (conflicts of interest regarding former clients)[2] of the Rules. The original

---

1. Rule 1.7 relates to the general rules regarding conflicts of interest. It states:
 (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, ...
 (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to an-
 other client or to a third person, or by the lawyer's own interests ...

2. Rule 1.9 relates to conflicts of interest regarding former clients. It states, in pertinent part:
 A lawyer who has formerly represented a client in a matter shall not thereafter:

complaint against the Respondent was filed by Mr. and Mrs. Reed on November 28, 2005. The Statement of Charges also alleged that because Respondent continued or undertook representation of McRobie after he consulted with and advised the Reeds on the same matter or a substantially related matter, resulting in a conflict of interest, he violated Rule 1.16(a)(1) of the Rules of Professional Conduct.[3]

For the purpose of understanding James' actions and the charges arising therefrom, it is necessary to consider the automobile accident and its aftermath. On July 16, 2005, Jonathan McRobie was operating an automobile in Mineral County, West Virginia, in which fourteen-year-old Josi Reed was a passenger. The vehicle being driven by McRobie wrecked, and young Josi Reed was killed. McRobie was accused of driving under the influence of alcohol, causing death, and other criminal charges.

At the time of the accident, Josi Reed was talking to her mother, Margaret Reed, from her wireless telephone. Just as the call ended, the accident occurred and it appears that either Josi Reed called her mother back or the accident caused the phone to redial Mrs. Reed's number. In any event, Mrs. Reed was able to hear her daughter and other events happening after the accident. These recollections were the subject of a statement given to law enforcement by Mrs. Reed as part of the criminal investigation of the accident and the driver McRobie's involvement therein. Josi Reed did not die immediately from her injuries; instead, the autopsy revealed she died of congestive heart failure after being transported to the hospital.

On July 18, 2005, McRobie's father, Kevin, visited the Respondent's law office to inquire about the possibility of retaining legal representation for his son. An appointment was scheduled for July 21, 2005.

Josi Reed's parents were residents of Florida who maintained a vacation home in Grant County. On July 21, 2005, Miss Reed's father Jay Reed went to appellee's law office for possible legal assistance. At the very time Respondent was meeting with the McRobies, Mr. Reed appeared at the office. He did not have an appointment. He was told by Respondent's staff that he was meeting with Jonathan McRobie and his parents. Mr. Reed informed Respondent's staff that he did not want to meet with the Respondent if he was going to represent McRobie.

Mr. Reed left the office and was later contacted by the Respondent's staff who informed him that the Respondent wanted to see him at the office. Both Mr. and Mrs. Reed went to the office that afternoon and met with the Respondent. The Reeds recalled that Mr. Reed informed Respondent that they did not want to meet with him if he had any intention of representing McRobie. The Respondent did not recall the Reeds making this declaration. Respondent's receptionist, Angela Boal, testified that she did not recall Mr. Reed making this statement.

The meeting with Respondent and the Reeds was of an hour's duration. The Reeds recalled conveying factual information about the accident and asking questions about related legal issues. Mrs. Reed testified that she and her husband were seeking legal advice on a wide-range of issues, including insurance, the quality of law enforcement in the area and the procedural aspects of the criminal case. During the course of this meeting, the Respondent contacted the insurance adjuster, requesting that he be fair with the Reeds, and also arranged for a meeting between the prosecuting attorney of Mineral County and the Reeds. Respondent was not

---

(a) represent another person in the same or substantially related matter in which that person's interest are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

3. Rule 1.16 states in pertinent part:

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw form the representation if

(1) the representation will result in violation of the rules of professional conduct or other law.

present nor did he request to be present at the subsequent meeting with the prosecutor and the Reeds.

No written fee agreement was signed by the Reeds and the Respondent. No retainer agreement was executed. Mrs. Reed testified that she felt she was speaking to Respondent as her attorney during this meeting. Neither Mr. Reed nor Mrs. Reed was able to identify any specific factual information provided to Respondent during this consultation that would not have been otherwise available to any attorney representing McRobie. Thereafter, a four-count indictment[4] was returned against McRobie during the September, 2005, term.

Respondent testified that he perceived the meeting with the Reeds as an initial consultation and likewise agreed that he did not garner any factual information from the Reeds that would not have been later available to him through traditional criminal discovery. After the Respondent met with Jonathan McRobie and his family, and with Mr. and Mrs. Reed, he decided to represent Jonathan McRobie in the criminal proceedings arising from this accident. This decision was conveyed to the Reeds when Mrs. Reed contacted the Respondent the next day.

At the same time the criminal indictment was pending against McRobie, the ODC initiated an investigation into the ethics complaint filed by the Reeds against the Respondent. The Respondent advised the circuit court by letter dated February 7, 2006, of the pending nature of the complaint and requested "that the Court should consider this matter further." The record does not reflect that a formal motion for disqualification of Respondent was ever filed.

The circuit court convened a hearing on the disqualification issue on March 27, 2006. Present at the hearing was the Respondent and his client, McRobie, Mr. and Mrs. Reed, as well as the prosecuting attorney. At this hearing, the prosecuting attorney requested that the Reeds be allowed to speak to the court regarding their issues with the Respondent's representation of McRobie. The Reeds reiterated their concerns regarding the propriety of the Respondent's representation of McRobie. The Court agreed to convene another hearing on the issue approximately two months later. Prior to convening that hearing, however, Jay Reed informed the circuit court by letter dated May 8, 2006, that "after much personal deliberation and consulting with attorneys here in Florida and in West Virginia," he and his wife were withdrawing their objections to Respondent's continued representation of McRobie.

Lynn Nelson, the prosecuting attorney for Mineral County, provided an affidavit for use at the disciplinary hearing that on July 21, 2005, he was contacted by the Respondent, who stated that he needed to meet with the Reeds. The prosecutor met with the Reeds that day for approximately 20 minutes. The Reeds and the prosecuting attorney agreed that an accident reconstruction would have to be performed and had generalized discussions about the criminal case that would be pursued against McRobie. Mr. Nelson testified that "[I] did not learn anything from Mr. and Mrs. Reed that I would consider confidential that would preclude Mr. James [Respondent] from representing Mr. McRobie." He also testified that he would not have called Mr. Reed as a witness had the McRobie case gone to trial, because he was not in town at the time of the incident. Mrs. Reed's testimony was not needed, as the details of her telephone conversation with her daughter around the same time as the accident would have been admissible through the testimony of the investigating officer.

With Respondent as his counsel, McRobie ultimately entered into a plea agreement with the State. Under the terms of that agreement, McRobie entered a plea to one count of Unlawful Driving Under the Influence Causing Death, a misdemeanor. The

**4.** Count 1 of the indictment alleged that McRobie committed the felony offense of driving under the influence of alcohol involving death, in violation of West Virginia Code § 17C–5–2(a); Count 2 alleged the misdemeanor offense of negligent homicide, in violation of West Virginia Code § 17C–5–1; Count 3 alleged the misdemeanor of driving under the influence of alcohol, in violation of West Virginia Code § 17C–5–2; and Count 4 alleged the misdemeanor offense of contributing to the delinquency of a minor, in violation of West Virginia Code § 49–7–7.

State recommended that McRobie serve 180 days in jail without credit for good time. McRobie agreed to pay the funeral expenses of Josi Reed, a total of $7,074.00, and the Court fined McRobie $1,000.00. Mr. and Mrs. Reed were present at the plea hearing held on November 15, 2006, and voiced their concerns about the agreement.[5] Despite the Reeds' concerns, the plea was accepted and the court sentenced McRobie in accordance with the State's recommendations.

In its report to the Lawyer Disciplinary Board, the Hearing Panel Subcommittee recommended that the Statement of Charges brought against James be dismissed. The HPS noted that it felt sympathetic toward the "tragedy endured by the Reeds, and the fact that their grief was compounded by the confusion over Mr. James' role," but that the ODC had failed to prove by clear and convincing evidence that James had violated the Rules of Professional Conduct.

Pursuant to Rule 3.11[6] of the Lawyer Disciplinary Procedure, the ODC filed written objection with the Clerk of this Court to the HPS recommendation. Rule 3.13 of the Lawyer Disciplinary Procedure requires this Court to "file an opinion or order disposing of the case."

## II.

## STANDARD OF REVIEW

▮ Our standard of review in lawyer disciplinary proceedings was set forth in Syllabus Point 3 of *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994), as follows:

A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

▮ As to recommendations made by the HPS, this Court stated in part in Syllabus Point 3 of *In re Brown*, 166 W.Va. 226, 273 S.E.2d 567 (1980) that "absent a showing of some mistake of law or arbitrary assessment of the facts, recommendations made by the State Bar Legal Ethics Committee ....are to be given substantial consideration." Furthermore, we have made clear "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decision about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syllabus Point 3, *Committee on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984). With these standards in mind, we must resolve the disputed facts and determine whether the ODC has shown that the Respondent has violated the Rules.

## III.

## DISCUSSION

This case illustrates the difficulties that may arise when two potential clients seek to

---

5. The loss suffered by the Reeds was tangible and ever-present in the courtroom as they voiced their concerns with the plea agreement. Mr. Reed expressed concern that McRobie did not attempt to seek aid for their daughter, who was trapped beneath the vehicle for almost a half hour. Instead, he made a series of 20 telephone calls to various friends and family members. Mr. Reed also expressed dismay that McRobie attempted to rid the scene of beer cans and other evidence of alcohol consumption.

6. Rule 3.11 states:
The Office of Disciplinary Counsel and the lawyer shall have thirty days after the date of the report within which to file written consent or objection with the Clerk of the Supreme Court of Appeals to the disposition of the formal charge recommended by the Hearing Panel Subcommittee. If neither the Office of Disciplinary Counsel nor the lawyer files an objection within such thirty day period and an order is entered by the Supreme Court of Appeals adopting the disposition of the formal charge recommended by the Hearing Panel Subcommittee, a motion for relief from such order, if filed within four month of the date of the report by the Hearing Panel Subcommittee, may be made pursuant to Rule 60(b)(1), (2), (3) or (6) of the Rules of Civil Procedure.

engage the same attorney. At the outset we note that both the Petitioner and Respondent agree that if this Court were to adopt proposed Rule 1.18 (Duties to Prospective Client),[7] potential situations such as the one raised in this instant case would be less conflicted. As succinctly noted in Respondent's brief in support of dismissing the Statement of Charges, the American Bar Association noted in its comments that there are legitimate reasons for making distinctions between a potential client and an actual client:

> Prospective clients, like clients, may disclose information to a lawyer, place documents or other property in the lawyer's custody, or rely on the lawyer's advice. A lawyer's discussions with a prospective client usually are limited in time and depth and leave the prospective client and the lawyer free (and sometimes required) to proceed no further. Hence, prospective clients should receive some but not all of the protection afforded clients.

Inasmuch as this rule has not been adopted by this Court and was not applicable at the relevant times herein, we address the allegations against Mr. James in light of the existing rules and regulations that were applicable. The ODC urges us to conclude that the Respondent's actions violated both Rule 1.7 and Rule 1.9 of the Rules of Professional Conduct. We address each separately.

### 1. Rule 1.7 does not apply unless there are two actual clients.

The ODC urges this Court to find that the Respondent's actions violated Rule 1.7.[8] The Respondent argues that this rule clearly does not apply to prospective clients, only actual clients, and as such, it has no application to this case.

The hearing panel noted that this rule is aimed at conflicts of interest arising where the lawyer is simultaneously representing two actual clients whose interests are adverse. The report of the hearing panel cited two cases wherein this Court has been reluctant to extend the requirements of Rule 1.7

---

7. *On December 10, 2008, this Court put out for public comment amendments to the Rules of Professional Responsibility. Proposed Rule 1.18 of the Rules of Professional Conduct states:*

(a) A person who discusses with a lawyer the possibility of forming a client-lawyer (b) relationship with respect to a matter is a prospective client.

(b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.

(c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such matter, except as provided in paragraph (d).

(d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:

(1) both the affected client and the prospective client have given informed consent, confirmed in writing, or:

(2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and

(I) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(ii) written notice is promptly given to the prospective client.

8. Rule 1.7 states as follows:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consults after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

beyond the clear language of the rule. In *Lawyer Disciplinary Board v. Artimez*, 208 W.Va. 288, 540 S.E.2d 156 (2000), we refused to hold that Rule 1.7 prohibitions were applicable in a case where the attorney was having an affair with his client's spouse. While the relationship itself was condemned by this Court, there was no violation of this rule because the client's wife was not an actual client, and therefore, there was no conflict of interest between two actual clients.

Likewise, in the case of *Committee on Legal Ethics v. Cometti*, 189 W.Va. 262, 430 S.E.2d 320 (1993), we held that Rule 1.7(b) did not apply in the case where the attorney had been discharged from representation and subsequently sued his client for the return of his personal effects when the attorney left a house he rented from his former client.

In its Memorandum of Law, ODC argues that "Respondent essentially met with directly adverse parties in the same legal matter and certainly established an attorney-client relationship with the second party [the Reeds] he consulted that day. Then on the next day, Respondent decided he would represent the first party he had met with the day before." No substantive case law is cited, however, on the issue of whether these actions violated Rule 1.7.

After a careful review of the record before us, we must conclude that the hearing panel subcommittee was correct when it determined that there was not established an attorney-client relationship between the Respondent and the Reeds. Absent this relationship, Rule 1.7 of the Rules of Professional Conduct does not apply to this situation involving one actual client (McRobie) and one potential client (Estate of Josi Reed). As such, we find that the conclusions of the hearing panel subcommittee were supported by the evidence adduced at the various hearings and will not disturb them.

**2. Absent the establishment of an attorney-client relationship and the exchange of confidential information, Rule 1.9 is inapplicable.**

In its report to this Court, the HPS analyzed the application of Rule 1.9 [9] to the charges levied against Respondent. The panel concluded that Rule 1.9 was applicable where the conflict of interest involved a potential client and an actual client. The HPS first looked to the case of *State ex rel McClanahan v. Hamilton*, 189 W.Va. 290, 430 S.E.2d 569 (1993). That case evolved from a writ of prohibition being sought to disqualify the prosecuting attorney from pursuing criminal charges against a defendant who had been previously represented by the prosecuting attorney in domestic proceedings against the victim. *McClanahan*, at 291, 430 S.E.2d 569. The defendant sought the services of the prosecuting attorney in pursing a divorce from her husband on the grounds of cruel and inhuman treatment. The defendant subsequent to this representation engaged in conduct that led to her being indicted for the malicious assault of that same husband. The defendant intended to utilize the defenses of self-defense and "battered wife syndrome" and alleged that because of the prosecutor's past representation of her in divorce proceedings, he had the use of confidential information disclosed by the defendant. *McClanahan*, at 291, 430 S.E.2d 569. This Court found that Rule 1.9 required that the prosecutor should be disqualified because of his prior representation of the defendant.

The HPS noted that if the rationale of *McClanahan* were applicable to the case at bar, Rule 1.9(a) would have prohibited the Respondent from representing McRobie, unless the Reeds consented to such representation. The HPS found, however, that based upon this Court's decisions in a series of later cases that Rule 1.9(a) was not applicable where the alleged conflict of interest involved a potential client and an actual client. The

---

9. Rule 1.9 states as follows:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless that former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

hearing panel analyzed our decisions in *State ex rel DeFrances v. Bedell*, 191 W.Va. 513, 446 S.E.2d 906 (1994); *State ex rel Keenan v. Hatcher*, 210 W.Va. 307, 557 S.E.2d 361 (2001) and *State ex rel Youngblood v. Sanders*, 212 W.Va. 885, 575 S.E.2d 864 (2002). Therefore, the HPS found no violation by Respondent of Rule 1.9(a).

The *DeFrances* case involved an estate lawyer who met briefly with a testator who had a will, but who ultimately did not utilize the lawyer's estate planning services. After the testator's demise, some of the beneficiaries retained the estate attorney for litigation related to the estate. *DeFrances*, at 515, 446 S.E.2d 906. The circuit court disqualified the attorney from representing the beneficiaries, finding that Rule 1.9 prohibited this representation. *DeFrances*, at 516, 446 S.E.2d 906. This Court found that where the consultation consisted of one meeting, where no confidential information was exchanged, where the will was unchanged and where no services were rendered to the decedent, an attorney-client relationship had not been established for the purpose of applying Rule 1.9(a). *DeFrances*, at 518, 446 S.E.2d 906.

The *Keenan* case was an attempt to disqualify the prosecuting attorney from pursuing a recidivist claim against a defendant who had been represented by that prosecuting attorney in one of the predicate convictions. *Keenan*, at 309, 557 S.E.2d 361. This Court held that the prosecuting attorney was disqualified as a result of his prior representation of the defendant. This Court stated in Syllabus Point 1 of *Keenan*:

> Under West Virginia Rule of Professional Responsibility 1.9(a) a current matter is deemed to be substantially related to an earlier matter in which a lawyer acted as counsel if (1) the current matter involves the work the lawyer performed for the former client; or (2) there is substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client, unless that information has become generally known.

The *Youngblood* case involved the conflicts occasioned by consultation with two co-defendants. The attorney's paralegal first met with a co-defendant who was unable to pay for counsel's services. The factual information disclosed to the paralegal was later found to be generally known information contained in independent sources, such as police reports. The co-defendant later entered into a plea agreement whereby he was required to testify against his co-defendant Youngblood. Subsequent to the initial meeting with the co-defendant, Youngblood retained the same attorney. The State moved to disqualify counsel from representing Youngblood on the basis of the paralegal's meeting. *Youngblood*, at 888, 575 S.E.2d 864. This Court held in Syllabus Point 3 of *Youngblood*:

> When the information that is the subject of a disqualification motion predicated on prospective representation was "generally known" or otherwise disclosed to individuals other than prospective counsel, the information cannot serve as a basis for disqualification under Rule 1.9 of the Rules of Professional Conduct.

Because the information disclosed to the paralegal in Youngblood was generally known from independent sources attorney did not need to be disqualified.

 Applying our analysis and reasoning in *McClanahan, DeFrances, Keenan* and *Youngblood,* the HPS found that where a former potential client is involved, the second part of the rule, Rule 1.9(b) may be applicable. However, the Reeds, who were potential clients who did not become actual clients, were never represented by Respondent. Therefore, Rule 1.9(a), and its prohibitions against representing "another person in the same or substantially related matter in which that persons' interests are materially adverse to the interests of the former client" is not applicable. As explained in Syllabus Point 1 of *Keenan*:

> Under West Virginia Rule of Professional Responsibility 1.9(a), a current matter is deemed to be substantially related to an earlier matter in which a lawyer acted as counsel if (1) the current matter involves the work the lawyer performed for the former client; or (2) there is a substantial risk that representation of the present client will involve the use of information

acquired in the course of representing the former client, unless that information has become generally known.

Since Respondent did not perform any work on behalf of the Reeds and otherwise never represented the Reeds, Rule 1.9(a) does not apply to this situation.

Furthermore, we find that in light of our holding in *DeFrances*, there is insufficient evidence to support a conclusion that an attorney-client relationship was established between Respondent and the Reeds. Without the relationship of attorney-client, we agree with the HPS that Rule 1.9(a) is inapplicable.

Despite the absence of an attorney-client relationship, Rule 1.9(b) may be applicable. Syllabus Point 1 of *Youngblood* states:

> Where an attorney has received confidential information from a prospective client, the attorney may be disqualified from representing another individual on grounds of actual or presumed conflict despite the absence of an actual attorney-client relationship.

In its report the HPS addressed what confidential information may have been exchanged by the Reeds in their conference with the Respondent. It is apparent that the Reeds were not present in the vehicle at the time their daughter was killed. Their knowledge of McRobie's actions at that time, therefore, is limited. Mrs. Reed was talking to her daughter around the time of the crash and did appear at the scene, but the HPS found that there was no suggestion that she provided the Respondent with any confidential information that was not otherwise available. The HPS found that "there is no indication from the testimony or the documents presented to the Panel suggesting that the Reeds provided Respondent with information that somehow could have been used in the defense of Mr. McRobie to the disadvantage of the Reeds."

Careful review of the testimony adduced at the hearing supports the HPS's conclusions that the Reeds did not provide Respondent with information that could have been used in the defense of McRobie to the disadvantage of the Reeds. The affidavit from the prosecuting attorney establishes that he agreed with the Respondent to not call Mrs. Reed as a witness. The Respondent himself testified that any information he learned from the Reeds regarding the accident was available through other means. Most significantly, the Reeds themselves were unable to identify any confidential information disclosed to Respondent. Rule 1.9(b) therefore does not apply to this situation.

The burden was on the ODC to prove that the Reeds provided Respondent with confidential information not otherwise generally available. The HPS correctly found that the ODC did not meet this burden of proof.

## IV.

## CONCLUSION

For the reasons stated above, we adopt the Board's recommendation that the Statement of Charges filed against the Respondent, Daniel R. James, on September 21, 2007, be dismissed.

**Charges dismissed**