482 S.E.2d 204

**STATE of West Virginia ex rel. the OGDEN NEWSPAPERS, INC., dba the (Martinsburg) Evening/Weekend Journal, and Ogden Directories, Inc., Petitioners,**

v.

**Honorable Christopher C. WILKES, Judge of the Circuit Court of Berkeley County, Robin Wilkinson, Robert Felter, Alfred W. Sine, et al., Respondents.**

No. 23470.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 10, 1996.

Decided Dec. 13, 1996.

Robert M. Steptoe, Jr., Rodney L. Bean, Steptoe & Johnson, Clarksburg, for Petitioners.

Robert J. Schiavoni, David M. Hammer, Hammer, Ferretti & Schiavoni, Martinsburg, for Respondents.

PER CURIAM: [1]

In this original proceeding in prohibition, the petitioner, Ogden Newspapers, Inc. (hereinafter "Ogden"), seeks a writ of prohibition against the Honorable Christopher C. Wilkes from entering orders denying Ogden's motion to disqualify David M. Hammer and Robert J. Schiavoni (hereinafter "Hammer and Schiavoni") of the law firm Hammer, Ferretti & Schiavoni from participating in the cases against Ogden in the Circuit Court of Berkeley County. Ogden alleges that Hammer and Schiavoni, who represent four plaintiffs in these cases against Ogden, are effectively representing parties with adverse interests to those of the petitioner in matters substantially related to those for which these lawyers worked on when they were associates at the law firm of Steptoe &

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

Johnson, who has represented Ogden in the past and defends them now in these cases. We agree, in part, and grant a writ of prohibition as moulded.

## I.

### FACTS

This petition for a writ of prohibition arises from three lawsuits that are currently pending in the Circuit Court of Berkeley County. The plaintiffs in the underlying cases are suing Ogden Newspapers, Inc., a West Virginia corporation, and its subsidiaries.

Hammer and Schiavoni joined the law firm of Steptoe & Johnson as associates in 1986 and 1988, respectively, working primarily in the areas of labor and employment law. On August 1, 1992, Hammer and Schiavoni left Steptoe & Johnson to form their own law firm, Hammer, Ferretti & Schiavoni.

In August 1994, Hammer and Schiavoni filed a complaint against Ogden on behalf of a former employee of Ogden, alleging handicap discrimination in violation of the West Virginia Human Rights Act, W. Va.Code §§ 5–11–1 to –19 (1996).[2]

In 1995, Hammer and Schiavoni filed two complaints against Ogden on behalf of three former employees, alleging violations of the West Virginia Wage Payment and Collection Act, W. Va.Code §§ 21–5–1 to –12 (1987).[3]

Ogden filed motions to disqualify Hammer and Schiavoni from representing the plaintiffs in each of the three cases. The motions were consolidated for hearing and argued on October 27, 1995.[4] Judge Wilkes then entered three orders on November 15, 1995, denying the motions.

## II.

### JURISDICTION AND STANDARD OF REVIEW

We first address whether a writ of prohibition is appropriate in this instance:

In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

Syllabus Point 1, *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979). Our law is well settled that a party aggrieved by a trial court's decision on a motion to disqualify may properly challenge the trial court's decision by way of a petition for a writ of prohibition. *See, e.g., State ex rel. McClanahan v. Hamilton,* 189 W.Va. 290, 430 S.E.2d 569 (1993) (recognizing that a challenge to a circuit court's ruling on a motion to disqualify is appropriate through an original proceeding brought before this court); *State ex rel. DeFrances v. Bedell,* 191 W.Va. 513, 446 S.E.2d 906 (1994) (per curiam); *State ex rel. Taylor Associates v. Nuzum,* 175 W.Va. 19, 330 S.E.2d 677 (1985).

The reason that a writ of prohibition is available in this Court to review a motion to disqualify a lawyer is manifest. If a party whose lawyer has been disqualified is forced to wait until after the final order to appeal, and then is successful on appeal, a retrial with the party's formerly disqualified counsel would result in a duplication of efforts, thereby imposing undue costs and delay. *See State ex rel. DeFrances v. Bedell,* 191 W.Va. at 516, 446 S.E.2d at 909.

---

**2.** This case is styled *Robin Wilkinson v. The Ogden Newspapers d/b/a The Evening/Weekend Journal,* Civil Action No. 94–C–451.

**3.** These complaints, *Alfred W. Sine, Darrel Anderson, v. Ogden Directories, Inc.,* Civil Action No. 95–C–273 and *Robert Felter v. Ogden Directories, Inc.,* Civil Action No. 95–C–355, were filed

in the Circuit Court of Berkeley County on June 21, 1995 and August 14, 1995, respectively.

**4.** At the close of the hearing, counsel for Ogden requested the circuit court that the transcript of this hearing be subject to a confidentiality order.

Conversely, if a party who is unsuccessful in its motion to disqualify is forced to wait until after the trial to appeal, and then is successful on appeal, not only is that party exposed to undue costs and delay, but by the end of the first trial, the confidential information the party sought to protect may be disclosed to the opposing party or made a part of the record. Even if the opposing party obtained new counsel, irreparable harm would have already been done to the former client. The harm that would be done to the client if it were not allowed to challenge the decision by the exercise of original jurisdiction in this Court through a writ of prohibition would effectively emasculate any other remedy.

Therefore, Ogden has satisfied the *Hinkle* standard for our consideration of a discretionary writ of prohibition.[5] We now turn to our discussion on the disqualification issue.

## III.

## DISCUSSION

■ Ogden in this case seeks to disqualify the plaintiffs' lawyers under Rule 1.9 of the Rules of Professional Conduct.[6] Specifically, "[o]nce a former client establishes that the attorney is representing another party in a substantially related matter, the former client need not demonstrate that he divulged confidential information to the attorney as this will be presumed." Syllabus Point 4, *State ex rel. McClanahan v. Hamilton, supra.*

The rationale behind such a prophylactic rule is well grounded: a client, in order to receive the best legal advice, should be allowed to be assured that any private or personal disclosure made to her lawyer will be kept in the strictest confidence. *State ex rel. McClanahan v. Hamilton, supra* (citing *Green v. Montgomery County, Alabama,* 784 F.Supp. 841, 847 (M.D.Ala.1992) and *Developments in the Law—Conflicts of Interest in the Legal Profession,* 94 Harv. L.Rev. 1244, 1316 (1981)). A sacred aspect of the legal profession is that a client must be able to depend on their lawyer; that a client may confer with their lawyer with the "absolute assurance that that lawyer's tongue is tied from ever discussing it." *Gray v. State,* 469 So.2d 1252, 1255 (Miss.1985) (quoting *People v. Gerold,* 265 Ill. 448, 471–73, 107 N.E. 165, 175). Anything less than the strictest safeguarding by the lawyer of a client's confidences would irreparably erode the sanctity of the lawyer-client relationship.

We established guidelines for determining when disqualification is proper under Rule 1.9(a) in *State ex rel. McClanahan v. Hamilton, supra.* In *McClanahan,* we stated that the starting point for determining whether a conflict of interest exists under Rule 1.9(a) begins with an examination of whether the lawyer's representation of a present client involves the same or substantially related matter to that of a former client. 189 W.Va. at 293, 430 S.E.2d at 572.[7] In making such a

---

5. We have reformulated the standards by which we will entertain and issue a writ of prohibition for cases not involving an absence of jurisdiction in Syllabus Point 4, *State ex rel. Hoover v. Berger,* 199 W. Va. 12, 483 S.E.2d 12 (1996). The propriety of the utilization of a writ of prohibition in this case is obvious, however, it also is compatible with the newly-announced standards in *Hoover.*

6. Rule 1.9 provides as follows:

A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) represent another person in the same or substantially related matter in which that person's interest [sic] are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

7. *McClanahan* observes that the substantial relationship test was first articulated in the often quoted *T.C. Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265, 268 (S.D.N.Y.1953):

[T]hat the former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client.
189 W.Va. at 293, 430 S.E.2d at 572.

determination, we have adopted—as a majority of courts have—the following approach [8]:

> Under Rule 1.9(a) of the Rules of Professional Conduct, determining whether an attorney's current representation involves a substantially related matter to that of a former client requires an analysis of the facts, circumstances, and legal issues of the two representations.

Syllabus Point 3, *State ex rel. McClanahan v. Hamilton, supra.* Therefore, our task is to concentrate on the factual contours of the transactions or matters at issue and to ask whether the lawyers would have or reasonably could have learned confidential information in their work at Steptoe & Johnson for Ogden that would be of significance in their representation of their present clients. *See* 1 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering*, § 1.9:104, 293 (2d ed. 1990 & Supp.1996) (hereinafter Hazard).

If a former client establishes that the lawyer is representing a different party in a substantially related matter, it will be presumed that the lawyer received confidential information from the former client, so that the former client need not come forward with confidential information. Syllabus Point 4 of *State ex rel McClanahan v. Hamilton, supra* states: "Once a former client establishes that the attorney is representing another party in a substantially related matter, the former client need not demonstrate that he divulged confidential information to the attorney as this will be presumed." [9] This protects the former client from the dilemma of being forced to reveal confidences in order to disqualify a lawyer—the very confidences the former client is seeking to prevent a former lawyer from divulging or using to the detriment of the former client.[10]

Here, however, Ogden submitted documentary evidence under confidential seal, thereby providing the court with the opportunity to review the nature of the legal work provided by Hammer and Schiavoni. *See* Hazard, § 1.9:104, 294.1 n. 6. (noting that when the relevance of the alleged confidential information to the new matter cannot necessarily be gleaned from the assertions of the former clients, one way for the trial court to make a better determination is to have the former

**8.** In *McClanahan*, we discussed both the majority and minority approaches used to determine what is meant by a substantially related matter. The latter approach, adopted primarily by the Second Circuit, looks to whether the issues between the two representations are identical or virtually identical. *See Government of India v. Cook Indus., Inc.*, 569 F.2d 737 (2d Cir.1978). We noted that other courts have found the Second Circuit's approach to be less acceptable because in an issue-oriented inquiry, the issues may not be developed until well after the litigation has commenced and would delay a disqualification motion.

**9.** There are numerous ways in which confidential information can be used to the adverse interests of a former client. One of the better articulations of the array of possibilities to use such confidential information at trial adversely to a former client is contained in the following comment:

> Adverse use of confidential information is not limited to disclosure. It includes knowing what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject, and innumerable other uses. The rule concerns itself with the unfair advantage that a lawyer can take of his former client in using adversely to that client information communicated in confidence in the course of

the representation. It concerns itself also with the importance of protecting the confidential relationship between client and attorney; if clients withheld information from their lawyers out of fear that the lawyers might use the information against the client in a subsequent adverse representation, the ability of the legal profession to render valuable advice to its clients would suffer.

*Ullrich v. Hearst Corp.*, 809 F.Supp. 229, 236 (S.D.N.Y.1992).

**10.** We have expressed with concern when a party uses the disqualification rule as a sword in a disqualification proceeding that is designed as a method of harassment and an abusive litigation tactic:

> [D]isqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary. A disqualification of counsel, while protecting the attorney-client relationship, also serves to destroy a relationship by depriving a party of representation of their own choosing.... [Such] motions should be viewed with extreme caution for they can be misused as techniques of harassment.

*Garlow v. Zakaib*, 186 W.Va. 457, 461, 413 S.E.2d 112, 116 (1991) (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721–22 (7th Cir.1982)). *See also* Hazard, § 1.9:104, 294.

client reveal such information *in camera*, as was done in *United States Football League v. National Football League*, 605 F.Supp. 1448 (S.D.N.Y.1985)). We commend the lawyers and the circuit court for conducting this proceeding on the motion to disqualify in this fashion, providing both the trial court and this Court with a clearer insight into how and why matters may be substantially related and the types of confidential information that may have been disclosed.

We now apply the law to the facts of this case. The confidential documents under seal reveal, as Ogden asserts,[11] that while associates at Steptoe & Johnson, Hammer and Schiavoni had the opportunity to provide various legal services for the benefit of Ogden. According to Ogden, the work assignments undertaken by Mr. Hammer for the benefit of Ogden included:

(1) Legal research regarding bargaining duties, out-of-state law applicable to at-will employment, lifetime job guarantees, NLRA decertification procedures, mandatory rest periods under West Virginia law, restrictions on direct communications with employees represented by a union, and wrongful discharge issues;

(2) A Freedom of Information Act request to the National Labor Relations Board;

(3) Drafting a sexual harassment policy and assisting in an out-of-state sexual harassment case; and

(4) Research regarding the feasibility of applicant weight screening under the handicap discrimination prohibitions of the Americans with Disabilities Act, the West Virginia Human Rights Act, and the West Virginia Workers' Compensation Act.

The work assignments undertaken by Mr. Schiavoni for the benefit of Ogden included, according to Ogden:

(1) Legal research concerning employer successorship issues, employee early retirement options, age discrimination issues, corporate dissolution issues, veteran's rights issues, and employee health benefits issues;

(2) Representation in an unemployment compensation case involving the issue of independent contractor status versus employee status;

(3) Representation in a civil lawsuit on behalf of an Ogden subsidiary to recover lost profits;

(4) Assistance in regard to a municipal ordinance adversely affecting the use of news racks; and

(5) Representation in a workers' compensation benefits claim.

■ Upon review of the confidential documents and the assertions made by both parties in their briefs, we find that with regard to the two lawsuits brought under the West Virginia Wage and Payment Act, we find nothing in the legal services and representation provided by Hammer and Schiavoni that would constitute a substantial relationship to the matters in these lawsuits, whereby Hammer and Schiavoni could have obtained confidential information that could be used adversely against Ogden. Therefore, we find that the circuit court properly denied Ogden's motions to disqualify Hammer and Schiavoni as the lawyers for Alfred Sine, Darrel Anderson, and Robert Felter in their suits against Ogden.

■ However, with respect to the handicap discrimination case, when we examine the documentary evidence, it is problematic that Mr. Hammer, who undertook a research project regarding whether applicant weight screening would violate the provisions of the Americans with Disabilities Act, the West Virginia Human Rights Act, and the West Virginia Workers' Compensation Act, now brings a handicap discrimination case under the West Virginia Human Rights Act against Ogden. The nature of the research project, as described in a confidential memorandum, clearly supports the presumption that Mr. Hammer gained some insight into the corporate policies of Ogden and its affiliates— insight that would be substantially relevant

---

**11.** In the interests of protecting the confidences of Ogden, we reveal only that information which is made a matter of public record, to wit, factual assertions made in Ogden's brief which are not controverted.

to Hammer and Schiavoni's representation of Robin Wilkinson's handicap discrimination case against Ogden. We believe that Hammer and Schiavoni's representation could result in the use of confidential information received while associates at Steptoe & Johnson that could adversely affect Ogden. *See State ex rel. McClanahan v. Hamilton,* 189 W.Va. at 295, 430 S.E.2d at 574.

We, therefore, conclude that Ogden has made a sufficient showing that Hammer and Schiavoni are presently representing Robin Wilkinson in a matter substantially related to the work they did for Ogden, and that they did or could have obtained confidential information which could be used adversely against Ogden, so that the Hammer and Schiavoni, in their capacity as lawyers representing Robin Wilkinson, should be disqualified.

### IV.

### CONCLUSION

For the foregoing reasons, we find that the defendant Ogden Newspapers, Inc. has sufficiently shown that Hammer and Schiavoni have or reasonably could have learned confidential information while lawyers at Steptoe & Johnson about Ogden that would be of significance in their representation of Robin Wilkinson's handicap discrimination case. With regard to Hammer and Schiavoni's representation of the other plaintiffs in their actions under the West Virginia Wage Payment and Collection Act, we find Ogden has shown nothing to indicate that its former lawyers are now representing plaintiffs in a matter substantially related to the work they did for Ogden.

Writ granted as moulded.

RECHT, J., sitting by temporary assignment.

CLECKLEY, J., dissents, in part, and concurs, in part, without reserving the right to file a separate opinion.