607 S.E.2d 811

**STATE of West Virginia ex rel. George J. COSENZA, Richard J. Wolf, Remiglio O. Jacob, and Lily F. Jacob, Petitioners,**

v.

**Honorable George W. HILL, Judge of the Circuit Court of Wood County, West Virginia, and Stanley Bucklew d/b/a Bucklew Construction Company, Respondents.**

**No. 31756.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 1, 2004.

Filed Nov. 12, 2004.

George J. Cosenza, Esq., Richard J. Wolf, Esq., Cosenza, Merriman & Wolf, PLLC, Parkersburg, for the Petitioners.

Daniel A. Ruley, Jr., Esq., Pullin, Fowler & Flanagan, PLLC, Beckley, for the Respondent, Stanley Bucklew d/b/a Bucklew Construction Company.

PER CURIAM.

The petitioners herein, George J. Cosenza, Richard J. Wolf, Remiglio O. Jacob, and Lily F. Jacob, request this Court to issue a writ of prohibition to preclude the respondent herein, the Honorable George W. Hill, Judge of the Circuit Court of Wood County, from enforcing an order entered April 28, 2004. By that order, the circuit court disqualified petitioners Cosenza and Wolf, as well as the law firm of Cosenza, Merriman & Wolf, PLLC, from representing the Jacobs in their underlying cause of action against the additional respondent herein, Stanley Bucklew d/b/a

Bucklew Construction Company. Before this Court, petitioners Cosenza and Wolf request that a writ of prohibition be issued to overturn the lower court's ruling and to permit them to continue their representation of the Jacobs in the underlying proceeding. Upon a review of the parties' arguments and the pertinent authorities, we deny the requested writ.

## I.

### FACTUAL AND PROCEDURAL HISTORY

In September, 2000, the Jacobs filed a civil action against Bucklew in the Circuit Court of Wood County. At that time, the Jacobs were represented by James M. Bradley, Jr., and counsel for Bucklew was Diana Everett and Daniel A. Ruley, Jr., of Steptoe & Johnson. Petitioner Wolf also worked for Steptoe & Johnson at this time, but he avers that he did not work on the Jacobs' case or otherwise obtain any knowledge thereof from his colleagues. Thereafter, Mr. Wolf terminated his employment with Steptoe & Johnson in November, 2002, and became associated with Cosenza, Underwood & Merriman[1] in January, 2003.

For reasons not apparent to this Court, the Jacobs discontinued their relationship with their prior counsel[2] and, in October, 2003, retained petitioner Cosenza to continue their litigation against Bucklew.[3] While preparing the case for trial, Cosenza, in January 2004, asked Wolf to assist him with such trial preparations. In response to this addition to the Jacobs' legal team, counsel for Bucklew, on March 9, 2004, moved to disqualify both Wolf and the entire Cosenza law firm, including Cosenza, himself, based upon Wolf's prior employment with Steptoe & Johnson at the time that that firm represented Bucklew.

Following a hearing on the matter, the circuit court, by order entered April 28, 2004, determined that disqualification was warrant-

ed. In short, the circuit court concluded that "representation of the plaintiffs [the Jacobs] by George J. Cosenza, Richard J. Wolf and the law firm of Cosenza, Merriman & Wolf, PLLC may create an 'appearance of impropriety' although there is no evidence of actual impropriety." From this adverse ruling, the petitioners seek a writ of prohibition to preclude the circuit court from enforcing its disqualification order.

## II.

### STANDARD FOR ISSUANCE OF WRIT

■ This case is before the Court as a petition for a writ of prohibition. In prior cases concerning the disqualification of counsel, we have found the writ of prohibition to be an appropriate vehicle by which to challenge an attorney's ability to continue his/her challenged representation of a client. *See, e.g., State ex rel. Ogden Newspapers, Inc. v. Wilkes,* 198 W.Va. 587, 482 S.E.2d 204 (1996) (per curiam) *("Ogden I");* *State ex rel. McClanahan v. Hamilton,* 189 W.Va. 290, 430 S.E.2d 569 (1993); *State ex rel. Taylor Assocs. v. Nuzum,* 175 W.Va. 19, 330 S.E.2d 677 (1985). When deciding whether a prohibitory writ should lie in a particular case, we typically employ the following standard:

In determining whether to entertain and issue the writ of prohibition for cases not involving the absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or

---

1. The current name of Cosenza, Underwood & Merriman is Cosenza, Merriman & Wolf, PLLC.

2. In January, 2004, Pullin, Fowler & Flanagan, PLLC, replaced Steptoe & Johnson as Bucklew's counsel; however, Mr. Ruley continues to serve as counsel for Bucklew.

3. The circuit court noted, though, that no order memorializing this substitution of counsel had ever been tendered by the Jacobs or entered by the court.

substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). With this standard in mind, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

The instant proceeding presents a solitary issue for our deliberation and determination: whether petitioners Cosenza and Wolf and the Cosenza law firm should be disqualified from representing the Jacobs in their underlying matter against Bucklew. Concluding that the particular circumstances of this case warranted disqualification, the circuit court found that the appearance of impropriety precluded the attorney petitioners herein from continuing their representation of the Jacobs in the underlying matter.

Before this Court, the petitioners contend that disqualification is not proper because attorney Wolf, although employed by the same law firm that formerly represented Bucklew, did not work on or acquire any knowledge of the Jacobs' case while he was so employed. In support of their argument, the petitioners rely on Rule 1.10(b) of the West Virginia Rules of Professional Conduct, which provides that

> [w]hen a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that

person *and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter.*[4]

(Emphasis and footnote added). Based upon the facts underlying the instant proceeding, the petitioners argue that the second element of this test has not been satisfied insofar as Wolf did not personally represent Mr. Bucklew, and thus, he did not obtain any confidential information about Bucklew that he could now use in his representation of the Jacobs.

The respondent rejects the petitioners' arguments and states that the circuit court properly deemed the petitioners to be disqualified based upon the appearance of impropriety arising from their continued representation of the Jacobs in this matter. In this regard, Bucklew asserts that the circuit court properly ruled that Wolf, Cosenza, and the Cosenza law firm were disqualified from representing the Jacobs because it is charged with avoiding the appearance of impropriety and resolving all doubts in favor of disqualification. *Citing HealthNet, Inc. v. Health Net, Inc.*, 289 F.Supp.2d 755 (S.D.W.Va.2003) (mem.op.); *Roberts & Schaefer Co. v. San-Con, Inc.*, 898 F.Supp. 356 (S.D.W.Va.1995) (mem.op.); *Garlow v. Zakaib*, 186 W.Va. 457, 413 S.E.2d 112 (1991); *State ex rel. Taylor Assocs. v. Nuzum*, 175 W.Va. 19, 330 S.E.2d 677 (1985). Based upon Wolf's prior association with Bucklew's counsel, Bucklew asserts that Wolf should be precluded from representing the Jacobs, whose interests are adverse to Bucklew, in their ongoing litigation against him.

█ Our resolution of the disqualification question presented by this proceeding is governed by the West Virginia Rules of Professional Conduct. Specifically, West Virginia Rule of Professional Conduct 1.10(b) provides

> [w]hen a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a

---

4. Rules 1.6 and 1.9(b) of the West Virginia Rules of Professional Conduct both refer to information an attorney has acquired based upon his/her actual representation of a client. *See* notes 5 & 6, *infra.* In the case *sub judice,* the parties agree

that while Wolf's former law firm of Steptoe & Johnson represented Bucklew, Wolf, himself, never served as counsel for Bucklew in the underlying matter.

firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6[5] and 1.9(b)[6] that is material to the matter.

(Footnotes added). Based upon the plain language of Rule 1.10(b), it is clear that two criteria must be satisfied in order to disqualify counsel, or a law firm, from his/her, or its, representation of a client: (1) representation of an adverse client or affiliation with a law firm that represented an adverse client *and* (2) knowledge of confidential information pertaining to the same or a substantially related matter.

Under the facts of the case presently before us, it is undisputed that the law firm with which attorney Wolf was previously associated, Steptoe & Johnson, defended Bucklew in the Jacobs' lawsuit against him. What remains to be determined, however, is whether Wolf acquired knowledge of such representation so as to preclude him from representing a party whose interests are adverse to those of Bucklew, particularly given that the prior representation by Steptoe pertains to the same litigation in which Wolf proposes to represent the opposing parties.

 Wolf has averred that he did not acquire any knowledge of Bucklew's representation while he was employed by Steptoe. To satisfy the knowledge requirement, the acquisition of confidential information may either be actual or it may be imputed. In this regard, we previously have held that "[o]nce a former client establishes that the attorney is representing another party in a substantially related matter, the former client need not demonstrate that he divulged confidential information to the attorney as this will be presumed." Syl. pt. 4, *State ex rel. McClanahan v. Hamilton,* 189 W.Va. 290, 430 S.E.2d 569 (1993). Given the information provided to this Court in the case *sub judice,* we are inclined to find that such knowledge may properly be imputed to Wolf based upon the fact that the matter in which his former law firm represented Bucklew is the exact same lawsuit in which Wolf now seeks to represent Bucklew's opponents. Our finding that Wolf presumedly obtained confidential information regarding Steptoe's representation of Bucklew is further based upon the size of the law firm in which Wolf previously worked; the proximity of his office to those of the attorneys who directly worked on Bucklew's defense; and the spirit of collegiality associated with a law firm of that size.

During Wolf's employment with Steptoe and its representation of Bucklew, Wolf worked in the firm's Parkersburg, West Virginia, office, which employed approximately six attorneys. In his responsive brief before this Court, Bucklew represents that four of the aforementioned six lawyers "actively participated as counsel in one or more matters involved in the defense of [his] case." Of those attorneys, "[one lawyer's] office was on one side of Wolf's office, [another attorney's] office was on the other side of Wolf's office, [the third lawyer's] office was about 12 feet from Wolf's office and [the fourth attorney's]

**5.** Rule 1.6 of the West Virginia Rules of Professional Conduct provides that

> (a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).
>
> (b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:
>
> (1) to prevent the client from committing a criminal act; or
>
> (2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the

lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of a client.

*See supra* note 4.

**6.** West Virginia Rule of Professional Conduct 1.9(b) directs

> [a] lawyer who has formerly represented a client in a matter shall not thereafter:
>
> . . . .
>
> (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

*See supra* note 4.

office was about 40 feet from Wolf's office." Furthermore, the parties concede that it was common practice for all of the attorneys in Steptoe's Parkersburg office to occasionally meet to discuss the cases on which they were working.

In light of the office schematic and dynamics associated with Wolf's former law firm, we find it highly likely that attorney Wolf would have been exposed to discussions regarding Steptoe's representation of Bucklew in the instant litigation, whether or not he actually participated in them. Accordingly, we find knowledge of such confidences to be imputed to Wolf pursuant to Syllabus point 4 of *State ex rel. McClanahan v. Hamilton*, 189 W.Va. 290, 430 S.E.2d 569. Consequently, we further find, pursuant to Rule 1.10(b), that attorneys Wolf and Cosenza, as well as the entire Cosenza law firm, are disqualified from their representation of the Jacobs in their litigation against Bucklew.

■■ In addition to the Rule 1.10(b) prohibition placed upon Wolf's, Cosenza's, and the Cosenza law firm's continued representation of the Jacobs against Bucklew, the appearance of impropriety standard likewise counsels that disqualification is proper in this case. "Under the *Code of Professional Responsibility*, a lawyer may be disqualified from participating in a pending case if his continued representation would give rise to an apparent conflict of interest or appearance of impropriety based upon that lawyer's confidential relationship with an opposing party." Syl. pt. 2, *State ex rel. Taylor Assocs. v. Nuzum*, 175 W.Va. 19, 330 S.E.2d 677 (1985).

■ As the repository of public trust and confidence in the judicial system, courts are given broad discretion to disqualify counsel when their continued representation of a client threatens the integrity of the legal profession:

" 'A circuit court, upon motion of a party, by its inherent power to do what is reasonably necessary for the administration of justice, may disqualify a lawyer from a case because the lawyer's representation in the case presents a conflict of interest where the conflict is such as clearly to call in question the fair or efficient administration of justice. Such motion should be viewed with extreme caution because of the interference with the lawyer-client relationship.' Syl. Pt. 1, *Garlow v. Zakaib*, 186 W.Va. 457, 413 S.E.2d 112 (1991)." Syllabus point 2, *Musick v. Musick*, 192 W.Va. 527, 453 S.E.2d 361 (1994).

Syl. pt. 3, *State ex rel. Michael A.P. v. Miller*, 207 W.Va. 114, 529 S.E.2d 354 (2000). *But see United States v. Clarkson*, 567 F.2d 270, 273 n. 3 (4th Cir.1977) ("In determining whether to disqualify counsel for conflict of interest, the trial court is not to weigh the circumstances 'with hair-splitting nicety' but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing 'the appearance of impropriety,' it is to resolve all doubts in favor of disqualification." (citations omitted)); *Health-Net, Inc. v. Health Net, Inc.*, 289 F.Supp.2d 755 (S.D.W.Va.2003) (mem.op.) (same); *Roberts & Schaefer Co. v. San–Con, Inc.*, 898 F.Supp. 356 (S.D.W.Va.1995) (mem.op.) (same).

Based upon the above-described facts and the passage of a relatively short period of time between Wolf's departure from the Steptoe law firm and his new association with Cosenza and the Cosenza law firm,[7] we are convinced that the circuit court's determination that "representation of the [Jacobs] by George J. Cosenza, Richard J. Wolf and the law firm of Cosenza, Merriman & Wolf, PLLC may create an 'appearance of impro-

---

7. Unlike our prior decision in *State ex rel. Ogden Newspapers, Inc. v. Wilkes*, 211 W.Va. 423, 566 S.E.2d 560 (2002) (per curiam) (*"Ogden II "*), wherein we found that disqualification was not necessary where more than nine years had passed between the attorneys' representation of their former client and the initiation of litigation against that party on behalf of a new client, substantially less time is at issue in the case *sub judice*. In this matter, Wolf ended his employ-

ment with Steptoe in approximately November, 2002, and joined the Cosenza law firm in January, 2003. Within the year following his arrival at Cosenza, he began working on the Jacobs' case against Bucklew. When contrasted with the nine year time line present in *Ogden II*, we do not find the chronology of events at issue herein to be so remote as to nullify disqualification in this case.

priety' although there is no evidence of actual impropriety" was an accurate and proper assessment of the circumstances of this case. Accordingly, we deny the requested prohibitory relief and uphold the circuit court's ruling disqualifying attorneys Wolf and Cosenza and the Cosenza law firm from representing the Jacobs in their underlying litigation against Bucklew.

## IV.

## CONCLUSION

For the foregoing reasons, the requested writ of prohibition is hereby denied.

Writ denied.

Justice ALBRIGHT, deeming himself disqualified, did not participate in the decision of this case.

Judge SANDERS, sitting by temporary assignment.