655 S.E.2d 178 (2007)
STATE of West Virginia ex rel. JEFFERSON COUNTY BOARD OF ZONING APPEALS, Petitioner,
v.
Honorable Christopher C. WILKES, Judge of the Circuit Court of Jefferson County; Highland Farms, LLC; and Thorn Hill, LLC, Respondents.
No. 33500.
Supreme Court of Appeals of West Virginia.
Submitted October 23, 2007.
Decided November 20, 2007.
Brandon C.H. Sims, Stephanie F. Grove, Assistant Prosecuting Attorneys, Charles Town, WV, for Petitioner.
James P. Campbell, Esq., Campbell, Miller & Zimmerman, Leesburg, VA, J. Michael Cassell, Esq., Campbell, Miller & Zimmerman, Charles Town, WV, for Respondents.
STARCHER, J.
In this case we decide that a former lawyer for a county's board of zoning appeals cannot represent a private developer before the board in connection with a conditional use permit application that the lawyer worked on while serving as the board's lawyer.

I.

Facts & Background
In the instant case, the petitioner Jefferson County Board of Zoning Appeals ("BZA") contends that attorney J. Michael Cassell ("Mr.Cassell") and the law firm where Mr. Cassell is currently employed, Campbell, Miller, Zimmerman, P.C. ("CMZ"), must be disqualified from representing two companies  the respondents Thorn Hill, LLC and Highland Farms, LLC (together, "Thorn Hill")  in proceedings before the BZA involving a Thorn Hill conditional use permit ("CUP") application. In January of 2007, the Circuit Court of Jefferson County ruled that Mr. Cassell and CMZ need not be disqualified. The petitioner BZA challenges the circuit court's order in this Court via a writ of prohibition.[1]
The underlying events giving rise to the instant case began in 2001, when Thorn Hill filed conditional use permit application number Z0-04 with the Jefferson County Department of Planning, Zoning, and Engineering ("DPZE"), seeking a permit for a planned housing development of approximately 171 homes on 159.7 acres of land in the rural-agricultural district of Jefferson County. A CUP was needed for the development because under the county's zoning rules, the housing density of the proposed project was greater than would otherwise be allowed in this district.
Thorn Hill's permit application was evaluated and given a passing Land Evaluation and Site Assessment ("LESA") score by the county's Zoning Administrator. After receiving a passing LESA score, an application is eligible to be evaluated for its "compatibility." This process involves judgments by officials about the suitability of the proposed project. At this stage, members of the public may raise issues about the proposed development, and the issues raised must be resolved by officials.
The adequacy of the LESA support data that Thorn Hill submitted with its application was appealed by members of the public to the Jefferson County Planning Commission. That body found the LESA support data to be adequate. Members of the public then appealed the Planning Commission's decision to the petitioner BZA, which affirmed the Planning Commission's decision. An appeal of the BZA's determination was then filed in the Jefferson County Circuit Court, in which case Thorn Hill intervened.[2] Other appeals and cases related to the Thorn Hill CUP application also appear to have been filed (and ultimately resolved). It appears that *181 Thorn Hill's conditional use permit application number Z01-04 was finally approved in 2004.
Mr. Cassell, as a Jefferson County assistant prosecuting attorney, represented, advised, counseled, and litigated on behalf of the BZA in connection with the various appeals that were filed in connection with Thorn Hill's CUP application.[3]
Meanwhile, in 2003, Thorn Hill filed a second, enlarged CUP application, number Z03-05, which included its original proposed development that had been the subject of the Z01-04 application. Thorn Hill's second application increased the size of the proposed development to 595 single-family lots on 552 acres.
Members of the public also appealed the LESA score for the second Thorn Hill application to the BZA. The BZA affirmed the Zoning Administrator's passing LESA score determination. Mr. Cassell served as counsel for the BZA at several meetings where the BZA considered this appeal.[4] Mr. Cassell also wrote and received copies of letters on behalf of the BZA regarding the second Thorn Hill application.[5]
On December 10, 2004, Mr. Cassell tendered his resignation, effective January 31, 2005, to the Jefferson County Prosecuting Attorney. After giving notice of resignation, Mr. Cassell continued to represent the BZA and participate in matters involving the second Thorn Hill application.[6] On February 1, 2005, Mr. Cassell became a member of the firm of Campbell, Miller, Zimmerman, which was representing Thorn Hill before the BZA and in other proceedings. The CMZ firm has continued to represent Thorn Hill since Mr. Cassell joined the firm, and since joining CMZ, Mr. Cassell has represented Thorn Hill regarding the second Thorn Hill application that was filed during Mr. Cassell's tenure as an assistant prosecutor, and regarding which he provided legal advice to the BZA.[7]
A public hearing regarding Thorn Hill's second CUP application was scheduled to be held before the BZA on May 18, 2006. Due to a perceived conflict of interest presented *182 by Mr. Cassell's and CMZ's representation of Thorn Hill, the BZA continued the hearing, in order to first determine whether it would be proper for that body to hear the matter.[8]
On June 2, 2006, Thorn Hill filed a complaint for declaratory judgment, injunction, and petition for writ of mandamus in the Circuit Court of Jefferson County; and the BZA thereafter filed a motion to disqualify, both raising the issue of whether Mr. Cassell and CMZ were disqualified from appearing before the BZA in connection with Thorn Hill's pending permit application. An evidentiary hearing was held before the circuit court on November 21, 2006. The vice-chair of the BZA and a representative of Thorn Hill testified, along with an expert witness for each side. The vice-chair of the BZA testified that he viewed the entire Thorn Hill conditional use permit as one matter, and that he viewed all of his numerous closed-session conversations with Mr. Cassell about the Thorn Hill applications as privileged and confidential. Mr. Cassell did not testify.
On January 16, 2007, the circuit court entered an order denying the BZA's motion to disqualify, finding that each step or stage of the review of a conditional use permit application was a separate and not substantially related matter; and therefore that Mr. Cassell and the Campbell, Miller, Zimmerman firm were not disqualified from representing Thorn Hill before the BZA in connection with Thorn Hill's pending CUP application. (The circuit court's reasoning is further discussed at III. infra.) The BZA challenges this ruling in the instant writ of prohibition.

II.

Standard of Review
This Court stated in State ex rel. Ogden Newspapers, Inc. v. Wilkes, 198 W.Va. 587, 589-590, 482 S.E.2d 204, 206-207 (1996):
The reason that a writ of prohibition is available in this Court to review a motion to disqualify a lawyer is manifest. If a party whose lawyer has been disqualified is forced to wait until after the final order to appeal, and then is successful on appeal, a retrial with the parry's formerly disqualified counsel would result in a duplication of efforts, thereby imposing undue costs and delay.
Conversely, if a party who is unsuccessful in its motion to disqualify is forced to wait until after the trial to appeal, and then is successful on appeal, not only is that party exposed to undue costs and delay, but by the end of the first trial, the confidential information the party sought to protect may be disclosed to the opposing party or made a part of the record. Even if the opposing party obtained new counsel, irreparable harm would have already been done to the former client. The harm that would be done to the client if it were not allowed to challenge the decision by the exercise of original jurisdiction in this Court through a writ of prohibition would effectively emasculate any other remedy.
(Citations omitted.)
The relevant facts in the instant case appear to be undisputed; as always, we review the circuit court's legal determinations de novo.

III.

Discussion
West Virginia Rules of Professional Conduct, Rule 1.11, states:
SUCCESSIVE GOVERNMENT AND PRIVATE EMPLOYMENT

*183 (a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation. No lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:

(1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and
(2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.
(b) Except as law may otherwise expressly permit, a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person. A firm with which that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom.
(c) Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not:
(1) participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matter; or
(2) negotiate for private employment with any person who is involved as a party or as attorney for a party in a matter in which the lawyer is participating personally and substantially, except that a lawyer serving as law clerk to a judge, other adjudicative officer or arbitrator may negotiate for private employment as permitted by Rule 1.12(b) and subject to the conditions stated in Rule 1.12(b).
(d) As used in this Rule, the term "matter" includes:

(1) any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific parry or parties, and
(2) any other matter covered by the conflict of interest rules of the appropriate government agency.
(e) As used in this Rule, the term "confidential government information" means information which has been obtained under governmental authority and which, at the time this rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose, and which is not otherwise available to the public.[9]
(Emphasis added.)
Thus, the controlling principle of law that must govern the instant case is the *184 requirement set forth in Rule 1.11(a) that except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation. No lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless: (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and (2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.
The circuit court reasoned that Mr. Cassell was not representing Thorn Hill before the BZA "in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee." Id. Rule 1.11(d) states that a "matter," for purposes of the rule, includes "any . . . application." Substituting the word "application" for "matter," Rule 1.11(a) requires that "a lawyer shall not represent a private client in connection with a[napplication] in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation."
As the BZA's attorney, Mr. Cassell participated personally and substantially in connection with the two Thorn Hill permit applications in question. Therefore, the disqualifying language of Rule 1.11(a) facially and literally applies to Mr. Cassell  because he may not represent Thorn Hill before the BZA in connection with an application in which he participated personally and substantially as a public officer or employee, and the BZA has not consented to that representation.[10] (Additionally, the language of Rule 1.11(a) applies to CMZ: "[CMZ] may undertake or continue representation in the matter only if [Mr. Cassell] *185 is screened from any participation in the [application].")
Given that the disqualifying language of Rule 1.11(a) directly applies to Mr. Cassell and CMZ, it would take a very strong set of facts and compelling equities to persuade this Court that the Rule should be applied to mean something contrary to what it literally says. We do not find such a situation to be the case.
The respondents argue that despite Rule 1.11(d)'s definition of "matter" as including "any . . . application," each of the stages in the review and consideration of a CUP application  for example, the LESA point scoring process, identifying and addressing unresolved issues, and addressing compatibility  is a separate "matter" for purposes of Rule 1.11(a). They argue that when Mr. Cassell worked for the BZA, he was only involved with the LESA scoring stage; and that he is therefore free to represent Thorn Hill before the BZA in connection with other aspects of Thorn Hill's CUP application (for example, compatibility).
However, neither common sense nor applicable legal authority support the contention that each stage in the consideration of a conditional use permit application is a separate and discrete "matter." Nor do they support the contention that the BZA may not bar its former lawyer from aiding an applicant in connection with an application about which the lawyer once advised the BZA.[11]
In a similar case, In re Sofaer, 728 A.2d 625, 647 (D.C.Ct.App.1999) (holding that a former State Department lawyer was disqualified from representing Libya in connection with the Lockerbie airplane bombing when the lawyer had worked on issues related to the bombing at the State Department), the D.C. Court of Appeals quoted approvingly from an order of the court's Board on Professional Responsibility:
Respondent urges the Board to define "the matter" here as a series of separate "matters," with each matter being one step or issue concerning his involvement in responding to the Pan Am 103 bombing as Legal Adviser. Respondent would have us treat the Civil Case subpoena, the government's investigation, and the Criminal Case each as separate matters. The Board does not believe that an investigation and the proceedings that impose responsibility can be so neatly separated. . . . The fact that Respondent's legal work involving the investigation took various forms does not diminish the fact that Respondent was available as counsel, and served as counsel, on a continuing basis concerning legal work required by the Legal Adviser to support the overall investigation and assessment of responsibility.
The respondents cite to an earlier D.C. Court of Appeals case, Brown v. District of Columbia Board of Zoning Adjustment, 486 A.2d 37 (D.C.Ct.App.1984) ("Brown II"). In Brown II, the court upheld a zoning board's determination that former lawyers for the board were not disqualified from representing a property owner regarding a piece of property before the board, when the lawyers had dealt with issues relating to that same property while they were working for the board.
The facts and rationale of Brown II are quite different from the facts of the instant case. In Brown II, the zoning board did not oppose its former lawyers' representation of the property owner about matters that the board considered to be unrelated to the lawyers' former work for the board  whereas, in the instant case, the BZA's position is that Mr. Cassell is working on the same matter about which he advised and represented the BZA.[12]
*186 In State ex rel. Keenan v. Hatcher, 210 W.Va. 307, 313, 557 S.E.2d 361, 365 (2001) (holding that a prosecutor was disqualified from bringing a recidivist proceeding even though the prior offenses in which the prosecutor served as defense counsel were public matters), this Court identified a core principle that underlies attorney disqualification rules:
. . . a client, in order to receive the best legal advice, should be allowed to be assured that any private or personal disclosure made to her lawyer will be kept in the strictest confidence. . . . A sacred aspect of the legal profession is that a client must be able to depend on their lawyer; that a client may confer with their lawyer with the "absolute assurance that that lawyer's tongue is tied from ever discussing it.". . . . Anything less than the strictest safeguarding by the lawyer of a client's confidences would irreparably erode the sanctity of the lawyer-client relationship.
Quoting from State ex rel. Ogden Newspapers, Inc. v. Wilkes, 198 W.Va. 587, 590, 482 S.E.2d 204, 207 (1996) (per curiam) (ellipses in original).
In Healthnet, Inc. v. Health Net, Inc., 289 F.Supp.2d 755, 758 (S.D.W.Va.2003) Judge Goodwin stated:
. . . I continue to adhere to the rule that courts determining whether to disqualify counsel should act to prevent the appearance of impropriety and resolve doubts in favor of disqualification. I interpret the "appearance of impropriety" standard to include an objective component: the moving party must show that a reasonable former client would be concerned by the conflict.
(Citations omitted.)
This Court recently stated in State ex rel. Cosenza v. Hill, 216 W.Va. 482, 488, 607 S.E.2d 811, 817 (2004) (upholding a disqualification order even though there was no actual evidence of any impropriety):
As the repository of public trust and confidence in the judicial system, courts are given broad discretion to disqualify counsel when their continued representation of a client threatens the integrity of the legal profession:
A circuit court, upon motion of a party, by its inherent power to do what is reasonably necessary for the administration of justice, may disqualify a lawyer from a case because the lawyer's representation in the case presents a conflict of interest where the conflict is such as clearly to call in question the fair or efficient administration of justice. Such motion should be viewed with extreme caution because of the interference with the lawyer-client relationship.
(Citations omitted.)
We continued in Cosenza by quoting the following language from United States v. Clarkson, 567 F.2d 270, 273 n. 3 (4th Cir. 1977):
In determining whether to disqualify counsel for conflict of interest, the trial court is not to weigh the circumstances "with hair-splitting nicety" but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing "the appearance of impropriety," it is to resolve all doubts in favor of disqualification.
Id. (Citations omitted.)
In Allied Realty of St. Paul, Inc. v. Exchange National Bank, 283 F.Supp. 464 (D.C.Minn.1968), the court said:
Many a lawyer who has served with the government has an advantage when he enters private practice because he has acquired a working knowledge of the department in which he was employed, has learned the procedures, the governing substantive and statutory law and is to a greater or lesser degree an expert in the field in which he was engaged. Certainly this is perfectly proper and ethical. Were it not so, it would be a distinct deterrant *187 [sic] to lawyers ever to accept employment with the government. This is distinguishable, however, from a situation where, in addition, a former government lawyer is employed and is expected to bring with him and into the proceedings a personal knowledge of a particular matter  for which the government paid him while he was learning it and for which now the client who employs him theoretically will not have to pay.

(Emphasis added.) The emphasized language seems to be an apt description of Mr. Cassell's situation in connection with the Thorn Hill CUP application.
The BZA believes that its former lawyer may not permissibly move from the closed chambers of the BZA to the law firm conference room  and then in that conference room advise his new client about the same application that he had worked on while representing the BZA. The reasonable-client-centered approach discussed by Judge Goodwin in Healthnet, supra, and echoed in the foregoing-quoted authority supports the position of the BZA.
The circuit court also concluded in the instant case that the legal advice and counsel that Mr. Cassell gave the BZA in connection with Thorn Hill's CUP applications was "general advice" and "not the type of confidence" that gives rise to disqualification concerns.[13] In making this ruling, the circuit court relied on the testimony of the vice-chair of the BZA, who could not recall any particular advice given by Mr. Cassell at executive session meetings (that took place many months or years earlier), or any specific "secrets or confidences" that had been shared with Mr. Cassell.[14]
This conclusion by the circuit court placed an improper burden on the client BZA to recall and divulge particular confidences and instances of advice and counsel by its former attorney, and is contrary to this Court's holding that:
Once a former client establishes that the attorney is representing another party in a substantially related matter, the former client need not demonstrate that he divulged confidential information to the attorney as this will be presumed.
Syllabus Point 4, State ex rel. McClanahan v. Hamilton, 189 W.Va. 290, 430 S.E.2d 569 (1993). Cf. SIPS v. Vigman, 587 F.Supp. 1358 (C.D.Cal.1984).[15]

*188 IV.

Conclusion
Based on the foregoing authority and reasoning, we conclude and hold that all proceedings before a board of zoning appeals and other legal proceedings regarding an application for a conditional use permit are proceedings about the same "matter" for purposes of West Virginia Rules of Professional Conduct, Rule 1.11(a).
Consequently, we grant the requested writ of prohibition and hold that the determination of the Circuit Court of Jefferson County in the instant case holding that the appellee Mr. Cassell and his law firm, Campbell, Miller, Zimmerman, P.C., are not disqualified from representing Thorn Hill, LLC and Highland Farms, LLC before the Jefferson County BZA regarding the Thorn Hill Conditional Use Permit applications numbers Z-01-04 and Z-03-05 may not be enforced.
Writ Granted.
NOTES
[1] Because the instant case is before this Court on a writ of prohibition and without a fully developed record, the factual recitation in this opinion is taken from uncontradicted statements in the briefs of the parties, from the transcript of a hearing held by the lower court, and from findings of fact made by the lower court. The CUP application process in general and the several appeals and related cases involved in the instant case are complex; we believe that our simplified factual recitation is essentially accurate, but it may omit some events.
[2] It appears that at the time of the first Thorn Hill permit appeal, the BZA did not address compatibility issues; and that the BZA now does address compatibility issues.
[3] According to the website of Campbell, Miller, Zimmerman:

Mr. Cassell was an Assistant Prosecuting Attorney in Jefferson County, West Virginia for twenty years. He was the legal advisor for the County during the development and enactment of the Jefferson County Zoning Ordinance, which; is the only County Zoning Ordinance in effect in West Virginia. Mr. Cassell advised the County Commission of Jefferson County, the Board of Zoning; Appeals and the Planning and Zoning Commission. . . . Mr. Cassell was responsible for providing all legal advice Jefferson County in the area of land use, and planning and zoning.
[4] These included a meeting on May 20, 2004, when a principal of Campbell, Miller, Zimmerman, on behalf of Thorn Hill, presented a motion to dismiss the LESA appeal to the BZA. According to the minutes of the August 19, 2004 BZA meeting, Mr. Cassell was directed to make revisions to the findings of fact and conclusions of law that he previously drafted for the BZA for the second Thorn Hill permit appeal; and on October 6, 2004, those findings and conclusions were adopted as revised.
[5] On May 18, 2004, Mr. Cassell, as counsel for the BZA, received a copy of a letter from David Hammer to Zoning Administrator Paul Raco, wherein Mr. Hammer indicated that he was writing the letter in compliance with Mr. Cassel's recommendation. James P. Campbell was copied on the letter as counsel for Thorn Hill. On August 12, 2004, Mr. Campbell, as counsel for Thorn Hill, sent a letter to the BZA regarding the Thorn Hill appeal that was pending before the BZA. Mr. Cassell, as counsel for the BZA, was copied on the letter.
[6] On December 17, 2004, seven days after submitting his letter of resignation, but while still employed as an assistant prosecutor, Mr. Cassell as counsel for the BZA sent a letter to Paul Raco instructing Mr. Raco to act consistently with a request received in a December 16, 2004 letter from Mr. Campbell as counsel for Thorn Hill.
[7] Mr. Cassell drafted letters to the BZA on behalf of Thorn Hill regarding both the second Thorn Hill application LESA appeal, a proceeding in which Mr. Cassell formerly represented the BZA, and regarding the status of the entire second Thorn Hill CUP application, of which the LESA appeal was a part. On May 25, 2005, Mr. Cassell sent a FOIA request to Zoning Administrator and DPZE Department Head Paul Raco regarding the second Thorn Hill permit LESA appeal, and Thorn Hill's second CUP application. The request appears on Campbell, Miller, Zimmerman letterhead and the handwritten notations made by DPZE staff indicate that Mr. Cassell personally picked up the responsive documents on June 3, 2005. On October 11, 2005, Mr. Cassell wrote to Mr. Raco and asked Mr. Raco to move the Thorn Hill CUP application forward in the Development Review System process, and schedule a Compatibility Assessment Meeting.
[8] On several occasions the Jefferson County Prosecutor attempted to raise and resolve the issue of both Mr. Cassell's and Campbell, Miller, Zimmerman's perceived conflict with regard to Thorn Hill. On March 6, 2006, Jefferson County Prosecutor Michael D. Thompson raised the issue of Mr. Cassell's apparent conflict in writing when he sent a letter to CMZ requesting that Mr. Cassell and his firm take proactive steps to correct the problem in regard to then-pending case 05-C-372. On March 21, 2006, James P. Campbell responded in writing to Mr. Thompson's March 6, 2006 letter denying any conflict of interest or violation of the Rules of Professional Conduct, and stating that screening Mr. Cassell was unnecessary because the Thorn Hill cases did not involve the same "matter." On March 28, 2006, Mr. Thompson replied in writing to Mr. Campbell and requested that the firm and Mr. Cassell comply with Rules 1.9 and 1.11 of the West Virginia Rules of Professional Conduct. Additionally, Mr. Thompson and Mr. Campbell met in an unsuccessful attempt to resolve the issue.
[9] The official comment to Rule 1.11 says:

This Rule prevents a lawyer from exploiting public office for the advantage of a private client. It is a counterpart of Rule 1.10(b), which applies to lawyers moving from one firm to another.
A lawyer representing a government agency, whether employed or specially retained by the government, is subject to the Rules of Professional Conduct, including the prohibition against representing adverse interests stated in Rule 1.7 and the protections afforded former clients in Rule 1.9. In addition, such a lawyer is subject to Rule 1.11 and to statutes and government regulations regarding conflict of interest. Such statutes and regulations may circumscribe the extent to which the government agency may give consent under this Rule.
Where the successive clients are a public agency and a private client, the risk exists that power or discretion vested in public authority might be used for the special benefit of a private client. A lawyer should not be in a position where benefit to ft private client might affect performance of the lawyer's professional functions on behalf of public authority. Also, unfair advantage could accrue to the private client by reason of access to confidential government information about the client's adversary obtainable only through the lawyer's government service. However, the rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government. The government has a legitimate need to attract qualified lawyers as well as to maintain high ethical standards. The provisions for screening and waiver are necessary to prevent the disqualification rule from imposing too severe a deterrent against entering public service.
When the client is an agency of one government, that agency should be treated as a private client for purposes of this Rule if the lawyer thereafter represents an agency of another government, as when a lawyer represents a city and subsequently is employed by a federal agency.
Paragraphs (a)(1) and (b) do not prohibit a lawyer from receiving a salary or partnership share established by prior independent agreement. They prohibit directly relating the attorney's compensation to the fee in the matter in which the lawyer is disqualified.
Paragraph (a)(2) does not require that a lawyer give notice to the government agency at a time when premature disclosure would injure the client; a requirement for premature disclosure might preclude engagement of the lawyer. Such notice is, however, required to be given as soon as practicable in order that the government agency will have a reasonable opportunity to ascertain that the lawyer is complying with Rule 1.11 and to take appropriate action if it believes the lawyer is not complying.
Paragraph (b) operates only when the lawyer in question has knowledge of the information, which means actual knowledge; it does not operate with respect to information that merely could be imputed to the lawyer.
Paragraphs (a) and (c) do not prohibit a lawyer from jointly representing a private party and a government agency when doing so is permitted by Rule 1.7 and is not otherwise prohibited by law.
Paragraph (c) does not disqualify other lawyers in the agency with which the lawyer in question has become associated.
[10] At the evidentiary hearing in the instant case, Mr. Cassell's legal ethics expert opined that because the BZA adjudicates appeals in the CUP application review process, Mr. Cassell and his former client, the BZA, were not involved with permit "applications," so that Rule 1.11(d)'s definition of "matter" as including "application" did not apply. This suggested distinction is not persuasive. Both the initial determination by an agency regarding a permit application and the appeal of that determination to an agency tribunal are founded on and involve the same application. (Similarly, an appellate judge is disqualified from hearing a case where the judge was the lawyer for a party in a lower tribunal  it is the same case, even though it is on appeal.) We also note that the language of W. Va.Code, 6B-2-5(f) [2006] prohibits a former employee of a public body from representing a party before the public body in connection with a "permit application" if the employee was involved with the application in his or her public employment (unless the public body consents to the representation).
[11] Additionally, the uncontradicted testimony of the vice-chair of the BZA at the hearing before the circuit court in the instant case was that the BZA had discussed compatibility issues regarding the Thorn Hill permit applications with Mr. Cassell when he was the BZA's lawyer. Therefore, assuming arguendo that different steps or stages of the CUP application review process could be seen as different "matters" for purposes of Rule 1.11, Mr. Cassell's discussion of non-LESA issues like compatibility with the BZA disqualifies him and CMZ from representing Thorn Hill in connection with those issues.
[12] The zoning board in Brown II had initially ruled that it did not have jurisdiction to rule upon a motion to disqualify the two lawyers  a motion that was apparently made by a third party. Brown v. D.C. BZA, 413 A.2d 1276 (D.C.Ct.App.1980) ("Brown I"). After this jurisdictional determination was corrected in Brown I, the case was remanded to the zoning board. The board then found that the discrete transactions that the former board lawyers had worked on regarding the property in question were not the same "matter" as the transaction where the lawyers' disqualification was sought. The Court of Appeals in Brown II deferred to these findings by the zoning board.
[13] At oral argument in the lower court, the circuit judge said: ". . . being a public body, I assume, the BZA cannot have any secrets. I mean, that's the way I look at it." The BZA's counsel argued to the court that "when the BZA was consulting with Mr. Cassell about that, there were numerous discussions about the Thorn Hill project, and Mr. Cassell gained invaluable insight into the BZA members' thinking on the project." The circuit judge replied: "And what then  how does that then hinder  I mean, what is the confidence? He learned what his client has to do to comply with the law to get approval, right?" We disagree with the view expressed by the circuit judge  that there was no legally protected confidentiality in such private interchanges among the lawyer for and members of a deliberative public body like the BZA. The adoption of such an view would have a strong chilling effect on the members of public bodies, and would deprive them of the ability to exercise candor in private discussions with their attorneys.
[14] The BZA's evidence did show that Mr. Cassell drafted findings of fact and conclusions of law for the BZA after attending its closed sessions, and Mr. Cassell was present for and participated in "spirited discussions" on the correct way to interpret land use regulations, where his opinion as a lawyer was particularly influential.
[15] For further discussion of the issues involved in the instant case, see generally Rachel E. Boehm, "Caught in the Revolving Door: A State Lawyer's Guide to Post-Employment Restrictions," 15 Rev. Litig. 525 (1996); Eric Dyas, "Conflicts of Interest in Planning & Zoning Cases," 17 J. Legal Prof. 219 (1992); Kenneth L. Penegar, "The Loss of Innocence: A Brief History of Law Firm Disqualification in the Courts," 8 Geo. J. Legal Ethics 831, 860 (Summer 1985).

Given that our decision that West Virginia Rules of Professional Conduct, Rule 1.11, applies in the instant case to disqualify Mr. Cassell and CMZ, this Court does not ground its decision on West Virginia Rules of Professional Conduct Rule 1.9, which applies to attorneys generally, not just to former government lawyers  and which contains a requirement that the successive clients in question have "adverse" interests. The circuit court concluded that the BZA is a "presumptively neutral body" and cannot be "adverse" to Thorn Hill (or to anyone else)  so that Rule 1.9 simply cannot apply to Mr. Cassell. However, while Thorn Hill's and the BZA's positions may coincide in connection with specific issues that arise in the CUP application process, the interests of the two are not generally aligned and may on any given issue be in sharp conflict. This is because Thorn Hill wants to get a permit; whereas the BZA wants to follow the law and serve the best interests of the people of Jefferson County  whether Thorn Hill gets a permit or not. We also do not address the issue of whether Mr. Cassell was providing legal counsel to the BZA while he was negotiating with CMZ regarding employment. Finally, we find that there was no unfairly prejudicial delay by the BZA in raising the issue of Mr. Cassell's disqualification (the circuit court did not rely on any asserted delay in ruling on behalf on the respondents).